GEORGE W. BELL *et al.*, Appellants, v. THE COUNTY COURT OF PIKE COUNTY, Respondent.

St. Louis Court of Appeals, February 12, 1895.

1. **Mandamus**: WRIT TO COMPEL ACTION BY COUNTY COURT: PARTIES. An alternative writ of *mandamus* to compel a county court to act should run against the justices of that court by name.

2. ——: PURPOSES OF ALTERNATIVE WRIT. Such writ should contain by way of recital the allegations of the petition, it being regarded as the first pleading in the proceeding, and the return being made thereto and not to the petition.

3. ——: EXERCISE OF JUDICIAL FUNCTIONS BY COUNTY COURT: ESTABLISHMENT OF PUBLIC ROAD. The functions entrusted to the county court with regard to the establishment of a public road under Revised Statutes, section 7799, as amended in 1893, are judicial, and the performance of such functions can not be controlled by *mandamus*.

4. ———: ———: ———. An offer by the petitioners for such road to pay all the damages for the opening of it, and the cost of its construction, does not render the establishment of it obligatory on the county court.

*Appeal from the Pike Circuit Court.*—HON. REUBEN F. ROY, Judge.

AFFIRMED.

*J. H. Blair* for appellants.

*Fagg & Ball* and *Ras Pearson* for respondents.

The county court can not be compelled to make an order which involves, and can only be, the result of judicial discretion. *Strohan v. Audrain County Court,* 65 Mo. 643; *State ex rel. v. Francis,* 95 Mo. 44; *State ex rel. v. Macon County Court,* 68 Mo. 48; *State ex rel. v. Laughlin,* 75 Mo. 366. The county court might be compelled by writ of *mandamus* to proceed to a judicial duty, but not to dictate its judgment. *State ex rel v. Garesche,* 65 Mo. 48; *State ex rel. v. Young,* 84 Mo. 90; *Dunklin County v. County Court, Dunklin County,* 23 Mo. 449; *Miltenberger v. The St. Louis County Court,* 50 Mo. 172.

BIGGS, J.—This is a proceeding by *mandamus* to compel the justices of the county court of Pike county to appoint a board of commissioners to assess the damages arising out of the opening of a proposed public road. The return is in the nature or a demurrer, which the circuit court sustained. The appellants declined to amend, and the proceeding was dismissed.

The appellants were petitioners for the opening of a public road. The petition for *mandamus* makes the necessary averments of the various steps necessary and leading up to the presentation of their petition to the

county court.  It also contains the recital that, when the petition for the public road was presented, a remonstrance was filed, and that thereupon the county court, as provided by the act of 1893 (Session Acts 1893, p. 222, amendatory of section 7798 of the Revised Statutes of 1889), heard the witnesses produced by the respective parties as to the public necessity, practicability and probable damages to the owners of land through which the proposed road was to be established; that, upon the hearing, the estimated damages to the landowners were fixed at $150; that the court determined that the facts did not justify the location of the road at the expense of the county, and that thereupon the petitioners paid into the county treasury for the use of the landowners the sum of $150.  Then follow the further averments, that the road commissioner was ordered to survey and mark out the road, which he did, and that he subsequently reported to the court the names of the landowners who were willing to relinquish the right of way; that three others claimed damages, aggregating $325; that the damage claimed by eight others was not ascertained, and that the bridges on the proposed road would cost $1,300.

The petition then proceeds to state the grounds of complaint, as follows:

"Plaintiffs further say that upon the filing of said report in said court said petitioners agreed, then and there, and offered and proposed to said court, to pay the costs of all bridges, grading and culverts that might be needed upon said road, so that the building and construction of the same should not cost the county of Pike $1, and requested and demanded that said court appoint by order of record three disinterested freeholders of said Pike county, who were not interested or of kin to any of the parties asking damages on account of the location of said road, to act as a board of com-

missioners to view the premises, hear complaints and assess the damages to said landowners who had not relinquished the right of way, as provided by law.

"Plaintiffs say that, notwithstanding said petitioners had deposited and paid into the county treasury to the use of said landowners the probable amount of damages to said landowners as fixed by said court, and were ready and willing, and proffered to pay any damages in excess of the amount deposited in the treasury, as aforesaid, that might be assessed in behalf of said landowners for the right of way for said road by a board consisting of three commissioners, as provided by law, and notwithstanding they were ready and willing and proffered to pay the cost of the construction of all bridges, culverts and grading needed on said road, without any expense to said county of Pike, said county court did, at said regular May term and on the second day thereof, it being the eighth day of May, 1894, illegally and arbitrarily, and without right or authority, refuse to appoint, by order of record, three disinterested freeholders of said county of Pike, not interested or of kin to any of the parties asking damages on account of the location of said road, to act as a board of commissioners to view the premises, hear complaints and assess said damages; and did, illegally and arbitrarily, dismiss said proceedings in said court on the grounds, as recited in an order of said court, that said road was not of public utility."

There are some informalities in the present record to which we deem it advisable to allude, although no mention is made of them in the briefs. The alternative writ is directed to the county court, and it does not set forth the averments of the petition. The writ should have run against the justices of the county court by name, and the writ should have contained, by way of recital, the allegations of the petition. The reason of

this is, that the alternative writ is regarded as the first pleading in a proceeding by *mandamus*, and the return is to it and not to the petition. These, however, are informalities which we may pass by.

The theory of the petition is that, under the facts as stated, it became the absolute duty of the county court (section 7799 of the Revised Statutes of 1889, as amended, *supra*) to appoint a board of commissioners to ascertain and settle the land damages, and that, upon the final ascertainment of the amount and the payment thereof by the petitioners, and the payment by them of the further sum necessary for the construction of bridges and culverts, the further duty would devolve on the county court to order the road established and opened.

Section 7799, as amended, reads as follows: "But, if it appear that any person or persons, through whose lands such proposed road or change of road should run, have failed or refused to relinquish the right of way, and are not willing to take the amount of damages offered them by the court or petitioners, and if it further appears to the court that said proposed road or change of road is of such great public utility as to warrant the opening and establishing, or change, at the expense of the county, the county court shall appoint by order of record three disinterested freeholders of the county, who are not interested or of kin to any of the parties asking damages on account of the location or change of said road, to act as a board of commissioners to view the premises, hear complaints and assess damages, who shall receive for their services two dollars per day for each and every day that they are actually employed in the discharge of their duties. The said commissioners, after having been duly sworn to faithfully perform their duties, shall verbally notify the resident owner

or owners of such lands, if they can be found on their premises when proceeding to the discharge of their duties, of their business, and proceed to view the premises and assess the damages, and shall return to the clerk of the county court, on or before the first day of the next regular term of the court thereafter, the amount of damages to each tract of land separately, together with the name of each person interested therein, as far as known, with a description of the land on which such damages are assessed, and the report of said board of commissioners, when signed by a majority of them, shall be taken and considered as the report of all, and the clerk shall file the same in his office. Any party in interest may file written exceptions to said report on or before the third day of said term, if the term shall so long continue; if not, then before the end of said term, unless further time be given by the court.    Upon the filing of such written exceptions, the court shall make an order of record that a jury of six freeholders, qualified otherwise under the law to act, be summoned, who, after being duly impaneled under the supervision of the said county court, shall try the case anew on the question of damages, in each case separately, and if the amount assessed by the jury be the same or a less amount than that assessed by the board of commissioners, the exceptor shall pay the costs of the proceedings had by reason of said exceptions; but, if the amount of damages assessed by the jury be greater in amount than that assessed by the board of commissioners, the county shall pay the damages and costs, for which the owner or owners of said lands may recover according to law.''

The succeeding section (7800), as amended, reads as follows:

"Upon the proceedings had in the next preceding section, or upon the report of the commissioners therein

provided, if the parties in interest fail to file written exceptions thereto, the court shall pay the damages, or, if the court refuses to pay the damages, and the petitioners have paid the damages, the court shall order the road established and opened, or the change made, and the land so condemned or relinquished as aforesaid shall be forever considered and adjudged a public highway until changed or annulled by law, and the report of the road commissioner and of the commissioners to assess damage shall be recorded by the county clerk in a book kept for that purpose."

It is plain from the reading of section 7799 that the important duty therein imposed on justices of county courts is judicial and not ministerial in its character, and, being so, it is well settled that the manner of its performance can not be interfered with in *mandamus* proceedings. The report of the road commissioner showed that the landowners would no accept the amount of the previously estimated damages, and that their demands were far in excess of the amount deposited by the petitioners. The report also showed that, if the road was opened, an additional expense of $1,300 for bridges would have to be incurred. It then became the duty of the justices of the county court, before proceeding farther, to judicially determine whether, under the circumstances, the proposed road was of such great public utility or necessity as to warrant the expense of opening and *maintaining* it. The matter was so considered, and the decision was adverse to the opening of the road. It could make no difference that the petitioners proffered to pay all damages and the estimated cost of the bridges. The burden of *maintaining* the road would have been on the county, and it was the duty of the county justices to consider tha fact in determining the public utility of the road.

The appellants rely on the case of *Strahan v.*

*County Court*, 65 Mo. 644. That was a proceeding by a landowner to compel the county court to draw its warrant for the amount of damages which had been assessed in his favor by a jury by reason of the opening of a proposed highway through his land. The law provided for the assessment of damages to landowners by a board of commissioners appointed by the county court, and, upon exceptions filed, it also provided for a reassessment by a jury. Strahan had excepted to the damages allowed him by the commissioners, and a jury had been selected and had reassessed his damage, but the county court had declined, as it had a right to do (2 Wag. Stat., section 25, p. 1222), to order the road opened. Section 25 reads: "Upon the report of the commissioners and the assessment of damages, as above provided (by jury), if the county court shall deem the road of sufficient public utility to justify the payment of the damages assessed as aforesaid, or, in default thereof, if the petitioners shall pay such damages, the said court shall order the road to be opened, etc." The supreme court held that the petitioner was not entitled to relief, for the reason that it was within the judicial discretion of the county court—a discretion beyond mandatory control—to determine whether the road was of sufficient public utility to justify the expense of opening it. However, it was stated *arguendo* in the opinion that, while the county court under the facts as there presented, could not be compelled to make the order in the first instance, yet, if the petitioners had proffered to pay the damages, it might have been compelled to do so. These remarks were outside of the case, and for this reason we apprehend that the matter did not receive that consideration to which it was entitled, and which the learned judge, who delivered the opinion, usually accords to questions of importance. He overlooked the important fact that

the *cost of maintaining* a road is a matter of public concern, and is a fact which the county court should consider in every case in making its final order, and concerning which it can not be controlled or directed by any other tribunal.

Again, the facts in the case at bar are entirely different. Here the damages are uncertain and unascertained, and the petitioners claim that they have a right to compel the county court to proceed under section 7799, *supra*, and incur the expense of a long litigation upon their bare promise that they would pay whatever damages were finally assessed. Had the county court acted and relied on such a promise, it would have been clearly outside of the powers of the court as defined by the statute, and manifestly against the interest of the county at large.

It follows that the judgment of the circuit court must be affirmed. All the judges concur.