STATE ex rel. CONNOR et al. v. THE CITY OF ST. LOUIS et al., Appellants.

Division One, November 12, 1900.

1. **Sidewalks:** CONSTRUCTION BY ABUTTING OWNERS: ORDINANCE. The city ordinance provided that "the board of public improvements may, upon the application" of the abutting property owner, grant him permission "to construct the sidewalk in front of such property, but without such permission no sidewalk shall be constructed by any person other than the contractor having the annual contract for constructing new sidewalks." *Held*, this ordinance invested the board with discretion to permit the abutting owner the right to construct a sidewalk in front of his property or to deny to him that permission, and said board can not be compelled by *mandamus* to issue to him a permit.

2. ———: MAY AND SHALL: DEFINITION. The word "may" used in such ordinance does not mean "shall." It will be held to mean shall only in cases where public interests and rights are concerned, and where the public or third persons have a claim *de jure* that the power should be exercised.

3. ———: PERSONAL INTERESTS. A sidewalk does not belong to the abutting property owner, nor does the duty of constructing it devolve upon him. And where his only right to be permitted to construct the walk is based on the ordinance itself, no such private interests are involved as to justify the construing of an ordinance which says a board may grant him such permission, to mean it is the board's mandatory duty to do so.

4. **Official Action:** REVIEW IN MANDAMUS. The official act of an officer, committed in the exercise of a discretion intrusted to him, there being nothing present to indicate it to be capricious, oppressive, fraudulent or aught else than the result of his honest judgment, is not subject to review in a *mandamus* proceeding.

Appeal from St. Louis City Circuit Court.—*Hon. D. D. Fisher,* Judge.

REVERSED.

*B. Schnurmacher* and *Chas. Claflin Allen* for appellants.

(1) The City of St. Louis, by virtue of its charter, has authority to pave or otherwise improve its sidewalks, and to provide for the payment of the cost thereof by special assessment against the abutting property. Charter, art. 3, sec. 26, clause 2; art. 6, sec. 18. And the city may enter into annual contracts with a public contractor for the construction and reconstruction of such sidewalks. Charter, art. 6, sec. 15; R. O. 1892, sec. 1372. (2) Mandamus will not lie to compel an inferior tribunal or quasi-judicial body to give a particular judgment. County Court of Callaway Co. v. Inhabitants, 10 Mo. 679; Dunklin Co. v. District Court, 23 Mo. 449; State ex rel. v. Lafayette Co. Court, 41 Mo. 221; State ex rel. v. Byers, 67 Mo. 706; State ex rel. v. Young, 84 Mo. 90. (3) Mandamus will not lie to review official acts which require the exercise of judgment and discretion. State ex rel. v. Gregory, 83 Mo. 123; State ex rel. v. State Board of Health, 103 Mo. 222; State ex rel. v. Oliver, 116 Mo. 188.

*Edward J. O'Brien* for respondents.

(1) To hold that the board may grant a permit to one or more abutting owners, on a line of proposed sidewalk construction, and refuse it to others similarly situated, is not reasonable; that it can not be so, we think, does not admit of doubt. Yet that is precisely what the appellants claim the board can do; in other words, the members of the board may discriminate and make right to depend on favor instead of

law.   That is absurd.   We have in this case an apt illustration of the wrong springing from such a discretion, if it be such.   These local street improvements in St. Louis do not reach the ordinance stage until much detail work and delays are previously had under section 14, art. 6, of the charter. Then, when it becomes an ordinance in due course, much more time is consumed.   To the freeholder wanting to improve his property frontage these delays are very annoying, and frequently injurious.   But, when the ordinance is passed, and apparently nothing remains except to do the work, he finds, as did the relators herein that he is not allowed to do it himself, because another element, viz:—an "annual contractor"—has supervened, being put forward by the board to do the work apparently whenever the annual contractor chooses to do it, without regard to the wishes of the person chargeable with its payment.   Nearly five months were permitted to pass after the approval of Ordinance 18868 before relators asked the court for relief herein, and during all that time the city failed to take any action to carry out this improvement; on the contrary, the city officers in charge impeded the carrying on of the work by refusing the permit in that time.   (2) We deny the board's discretion in this matter. However, if it were discretionary, the result must be the same, as whenever the court finds a case where officials are derelict and unreasonable in performing their duties, thus abusing a discretion they might otherwise exercise, such acts, under such circumstances, will be rectified and controlled by mandamus.   State ex rel. v. Board of Health, 103 Mo. 22; State, etc., v. County Court, 41 Mo. 221; State, etc., v. St. Louis Public Schools, 134 Mo. 296.

VALLIANT, J.—Appeal from the judgment of the circuit court of the city of St. Louis awarding a peremptory writ of mandamus, commanding the city and its board of

public improvements to issue a permit to relators to construct a sidewalk in Easton avenue, a public street in the city, in front of their property.

It appears from the record that in 1897 the city passed an ordinance requiring the board of public improvements to cause to be constructed a granitoid sidewalk on Easton avenue between Marcus avenue and Kings highway according to certain specifications, the work to be done by the contractor having the annual contract with the city for such work, and providing in the usual way of such ordinances for the payment of the same by special tax bills issued against the abutting property.

At the time this ordinance was passed there was a provision in the general ordinances (section 569, Revised Ordinances 1892) in these words: "Whenever the municipal assembly shall direct by ordinance the improvement of a public street or avenue, the board of public improvements may, upon the application of the owner of any property fronting or bordering such improvement, grant permission to such owner to construct the sidewalk in front of such property, but without such permission no sidewalk shall be constructed by any person other than the contractor having the annual contract for constructing new sidewalks."

There was also in force at the time another general ordinance, section 1372, Revised Ordinances 1892, requiring the board of public improvements to let a contract annually "for the grading, constructing, reconstructing and repairing of sidewalks, and for the repairing of street and alley and gutter paving, and such other similar work as may be ordered by ordinance, or which may become necessary to be done during the year." This ordinance was adopted in conformity to the provision in section 15, article 6 of the city charter authorizing it. Under that ordinance such a contract had been let to Stifel and Ruckert for the year covering the events in ques-

tion and was in force.    It was specified in the contract that it was subject to the city charter and ordinances in general.

The relators own property abutting that street where the sidewalk in question was to be constructed and as such petitioned the board of public improvements for permission to construct that much of the sidewalk which would be in front of their property.   The board refused to grant the permission and this proceeding is to compel them to do so.   The circuit court awarded the peremptory writ as prayed and the defendants appeal.

That the sidewalk is a part of the street owned and controlled as such by the city, that the city had ample authority to pass the ordinance requiring the sidewalk to be constructed and the cost charged against the abutting property as therein provided, that the contract with Stifel and Ruckert was authorized and valid, are propositions about which there can be no conflict of opinion.   The authority of the city over this subject has been so recently expounded by this court that we deem it unnecessary to further discuss that subject. [Skinker v. Heman, 148 Mo. 349.]

But the point of difference between the parties to this suit arises out of their respective constructions of section 569, above quoted.   Relators are advised that under that section they have the right themselves to construct the sidewalk and that the board of public improvements have no discretion in the matter, no authority to refuse the permission therein provided for, but, in the discharge of a ministerial function only, are in duty bound to issue the license when demanded.

The words with which we have especially to deal are: "The board of public improvements may upon the application of the owner ....... grant permission to such owner to construct the sidewalk in front of such property, but without such permission no sidewalk shall be constructed by any

person other than the contractor having the annual contract," etc.

The contention of the relators is that the word 'may' is to be interpreted 'shall,' and that is the only point in their case.   If the board of public improvements had no discretion in the matter, if there is nothing in such case for them to exercise their judgment upon, nothing that the lawmakers framing that ordinance could have contemplated as likely to arise in the multitude and variety of cases coming within its scope calling for a sound judgment, which might lead to the granting such application under some circumstances and refusing it under others, then the relators' interpretation of the ordinance is correct.   But if the framers of the ordinance having in mind the general plan of letting the whole work of sidewalk construction in a district to contract, may be presumed to have forseen that cases might arise in which the public interest would not suffer, but on the contrary be promoted, and at the same time private interest advanced, by conferring on that department of the city government having the matter in hand the authority to make exceptions to the general plan when, in their good judgment, it would be best to do so, and in that view and to that end enacted the ordinance now under discussion, then the authority so conferred is to be exercised with good judgment and sound discrimination.   Of what was in the mind of the lawmakers we can only judge by the words they employed, but in interpreting those words we must bear in mind the subject treated of in the ordinance.

That the word 'may' in a statute is sometimes construed to mean 'shall' is undisputed.   But 'may' does not always mean 'shall' even when used in a statute conferring power on a public officer.   The true rule is this: if from the whole context we gather that the statute was designed to impose the act on the officer as a duty to be performed, then the authority to do it is an obligation to do it.   It has been said that when

the public welfare demands it or private rights are affected then the power to act is a duty to act.    But the private interests, for the protection of which the power will be construed to be a duty, must be such as exist independent of the grant of the power.

In Steines v. Franklin Co., 48 Mo. 167, the court construed a statute authorizing the county court to incur indebtedness for building public roads.    The statute provided that "before any expenditures shall be made . . . . . . . the county court may for the purpose of information submit the amount of the proposed expenditure to the voters," etc.    It then continued to the effect that if a majority at the election favored the scheme the expenditure might be made, otherwise not. The court held that 'may' there meant 'shall' and that the act of the county court incurring the expense without submitting the question to a vote of the people was illegal.    There was a plain duty imposed on the county court affecting the public-welfare and whilst in one part of the statute the words "may submit" were used, yet in another part in close connection were words forbidding the officers to incur the indebtedness without so submitting the question.

In State ex rel. v. King, 136 Mo. 309, the court held under the statute relating to fees of the recorder of deeds, wherein it is provided that he shall be allowed "such amounts for deputies and assistants in his office as the county court may deem necessary," that the officer was entitled to his actual expenses reasonably and necessarily incurred and that the word 'may' did not leave it discretionary with the county court.    In other words it was the plain duty of the county court to allow his necessary reasonable expenses.

Chancellor KENT expresses it thus:    "And in respect to statutes, the rule of construction seems to be, that the word *may* means *must* or *shall* only in cases where public interests and rights are concerned, and where the public or third per-

sons have a claim *de jure,* that the power should be exercised." [Newburgh Turnpike v. Miller, 5 Johns. Ch. 100.]

The Supreme Court of Pennsylvania expressed the rule as affecting private rights in Carr v. The Northern Liberties, 35 Pa. St. 324. In that case a municipal corporation was sued by an individual for damages resulting from flooding his premises in consequence of the failure of the corporation to construct proper sewers, the law having conferred on it the authority to make the sewers. The court said, loc. cit. 330: "We do not admit that the grant of authority to the corporation to construct sewers, amounts to an imposition of a duty to do it. Where a person has the right to demand the exercise of a public function, and there is an officer or set of officers authorized to exercise that function, there the right and the authority give rise to the duty; but when the right depends on the grant of authority, and that authority is essentially discretionary, no legal duty is imposed."

A New York statute conferred upon a trust company the right to be appointed administrator of estates of decedents, and authorized the surrogate to make such appointments; it was contended by the trust company that 'may' when addressed to a public officer meant 'shall,' and that having a personal interest to be served by the performance of the act authorized, it had a right to require the officer to perform it as a duty, but the court held the power to be discretionary. [In re Goddard, 94 N. Y. 544. Cited and quoted in Throop on Pub. Off. 550.] The learned text writer last quoted also says: "But the interest which entitles a private person to insist upon the execution by an officer, of a power conferred upon him, must be a definite and absolute legal right; a mere incidental benefit to accrue to him therefrom will not suffice." [Id. 549.]

Those citations sufficiently illustrate the rule of construction to guide us in interpreting the provision of the general

ordinances on which the relators rely.   The personal interest which the relators have in the case at bar is a mere incidental benefit that may accrue to their property by the manner in which the work may be done or in the amount and manner of paying for the same.   The sidewalk does not belong to them nor does the duty of constructing it devolve upon them. The only right they could have to interfere in the matter at all would be by permission of the city.   And the only right they now claim is based on the ordinance itself conferring authority on the board of public improvements to grant them a permit.   In this respect the case comes clearly within the category in which the Pennsylvania court say that no legal duty is imposed on the officer.

As a matter of fact there is nothing attempted to be shown to indicate that the public welfare demands that relators be permitted to construct that part of the sidewalk, or for that matter even that relators themselves would be better off.   It can not be assumed as a matter of law that relators would, if permitted, build a better sidewalk for the public or at a less cost to themselves.   There is really no right or interest public or private in jeopardy that would convert the power in the officers to grant the permit into a public duty to do so. The language of the ordinance relied on is: "the board of public improvements may grant permission to such owner to construct the sidewalk in front of such property, but without such permission no sidewalk shall be constructed by any person other than the contractor," etc.   If it had been intended to confer on the property owner the right to construct the sidewalk independent of what the board of public improvements might think of it, that purpose could have been expressed more easily in very much more apt terms, but if on the contrary it was intended to leave the matter in the discretion of the board it could scarcely have been expressed more clearly.

Vol. 158 mo—33

Common experience teaches us that in the constructing of an extended sidewalk in a great city like this, absolute uniformity is impracticable. On one lot may be a great building whose convenient appointments or architectural beauty would not only require a local change from the general plan but also that it be constructed in connection with the construction of the main building and by the same builders. Or on the other hand the officers in charge might see the justice and wisdom of making some concession in favor of the owner of a poorer piece of property. The theory of our city government carries the idea that the board of public improvements is to be a body of men learned in the arts and sciences used in the construction of public works, men of sound judgment and business experience and it is not surprising that in the city charter and ordinances many matters of importance are treated only in general outlines, leaving the more difficult points of detail to the judgment of the officers to whose department they belong. We think this provision in section 569, Revised Ordinances, relied on by relators was framed with that view and that the granting or refusing of the permission therein authorized, is left to the sound discretion of the board of public improvements.

This court has often decided that the official act of an officer committed in the exercise of a discretion intrusted to him, when there is nothing to justify the idea that the act is capricious, oppressive, fraudulent or aught else than the result of his honest judgment, is not subject to review in a mandamus proceeding. [State ex rel. v. Gregory, 83 Mo. 123; State ex rel. v. State Board of Health, 103 Mo. 22; State ex rel. v. Oliver, 116 Mo. 188.]

The judgment of the circuit court is reversed.

All concur; except *Marshall, J.*, not sitting, having been of counsel.