THE STATE ex rel. ABBOTT et al. v. ADCOCK et al., Appellants.

In Banc, February 2, 1910.

1. **PHYSICIAN: License: Reputable College: Burden.** Under the Act of 1907 (Laws 1907, p. 359, sec. 3), requiring all persons desiring to practice medicine or surgery to appear before the State Board of Health for examination and present satisfactory "evidence of having received diploma from some reputable medical college of four years' requirements at the time of graduation," the burden is on the applicant to show to the board that the medical college whose diploma he holds is a reputable medical college, and he must show that to the reasonable satisfaction of the board, as a necessary condition of his right to an examination for a license to practice.

2. ————: ————: ————: **Standards.** The State Board of Health had the power, under said act, to adopt and promulgate fixed rules and regulations as a standard by which a medical college would be adjudged to be "reputable," not for the purpose of refusing to a graduate of a medical college which did not measure up to the standard an examination touching his qualifications, but for the purpose of giving notice, in advance, of the minimum amount of work that would satisfy the board that a medical college was reputable. But though such rules were entirely void, the board was under no legal obligation to examine an applicant until he furnished satisfactory proof that the medical college from which he graduated was "reputable."

3. ————: ————: ————: ————: **Refusing Examination.** If the applicant to the State Board of Health for an examination and license to practice medicine, tender satisfactory evidence that the medical college from which he holds a diploma is a reputable medical college, the board cannot arbitrarily refuse him an examination because the medical college has not complied with rules and regulations fixed by the board as a minimum standard of instruction, etc. The proof being offered, the

board must determine whether or not the medical college is reputable, and it cannot determine it in the negative on the ground that the college has not complied with standards previously fixed by it.

4. **MANDAMUS: Action Demanded.** A writ of mandamus will not issue until a legal request for action has been made to the ministerial officer, and illegally been declined.

Appeal from St. Louis City Circuit Court.—*Hon. Hugo Muench*, Judge.

REVERSED AND REMANDED (*with directions*).

*Elliott W. Major*, Attorney-General, *Charles G. Revelle* and *James T. Blair*, Assistant Attorneys-General, for appellants; *Morton Jourdan* of counsel.

(1) The burden was on the relators to furnish evidence to the State board that Barnes University was a "reputable" medical college at the time relators were graduated. 1. The statutes, as amended in 1907, expressly required that all applicants for examination before the State Board of Health "shall furnish satisfactory evidence of having received diploma from some reputable medical college of four years requirements at the time of graduation." Laws 1907, p. 360. This language is susceptible of no other construction than that the burden was upon the relators, when they applied for examination, to produce evidence of the reputability of Barnes University. State ex rel. v. Chittenden, 112 Wis. 584; State ex rel. v. Coleman, 64 Ohio St. 387. 2. Relators did not at any time offer to produce to the state board any evidence as to the reputability of Barnes University. It is not to be presumed that if relators had proffered the requisite proof the state board would have refused to hear it. State ex rel. v. Chittenden, 112 Wis. 584. (2) Relators having failed to comply with the statute, this suit cannot be maintained. 1. Relators having failed to furnish the state board any sort of evidence

Abbott v. Adcock.

as to the reputability of Barnes University, cannot invoke the writ of mandamus. The burden being placed by statute upon relators to take the initiative and offer the proof, thereby to set the board in motion, and relators having failed to comply with this condition precedent, they cannot maintain this proceeding. The language of the statute is plain and unequivocal. Relators cannot predicate a right to recover upon the mere fact, if it was a fact, that Barnes University was, or is, reputable. The People ex rel. v. Dental Exmrs., 110 Ill. 186. 2. Manifestly, relators cannot ground a right to the writ upon the fact that Barnes University was and is a reputable school, had they proved it never so well. People ex rel. v. Dental Exmrs., 110 Ill. 186. Either (1) the Board of Health must decide that the college is reputable, or (2) the board, on the evidence produced to it by relators, as the statute requires, must act so arbitrarily and oppressively as to warrant judicial interference, else the writ cannot go. (3) The decision of the board in 1907 that Barnes University was not reputable did not excuse relators from offering the evidence required of them by the statute. No presumption can be indulged that had relators produced to the board, as the statute required, the evidence which they produced on the trial, the board would have refused to hear it or would have refused to find the college reputable. State ex rel. v. Chittenden, 112 Wis. 584; State ex rel. v. Med. Col., 64 Ohio 387. The point to be determined was the reputability of Barnes University at the time relators were graduated and presented themselves for examination. The facts before the board in November did not lose all their evidentiary force by the mere lapse of time. State ex rel. v. Chittenden, 112 Wis. 579; Board of Health v. People, 102 Ill. App. 616; State ex rel. v. Coleman, 64 Ohio St. 387. No effort to secure a reinvestigation was made, and no effort to remove, or suggestion looking toward the re-

moval of the board's impression that the college was not reputable, was made. State ex rel. v. Chittenden, 112 Wis. 580. (4) The statute was notice that relators must prove Barnes University's reputability. State ex rel. v. Webster, 150 Ind. 615. (5) The trial court simply usurped the board's functions and permitted the proof, which the statute (Laws 1907, p. 360) requires to be submitted to the board, to be offered, for the first time, to the circuit court of the city of St. Louis. State ex rel. v. Chittenden, 112 Wis. 575; State ex rel. v. Gregory, 83 Mo. 136; State v. Medical College, 60 Ohio St. 123. (6) Relators, in proceedings by mandamus, must always show a clear and specific right to the relief claimed. State ex rel. v. McIntosh, 205 Mo. 635; State ex rel. v. Bridge Co., 206 Mo. 134; Kirchgessner v. Board of Health, 53 N. J. L. 596. The writ should never be granted in doubtful cases. State ex rel. v. Bridge Co., 206 Mo. 147; State ex rel. v. Buhler, 90 Mo. 570; 2 Spelling on Mandamus, sec. 1441.

*W. D. Harris, C. D. Corum* and *J. S. McIntyre* for respondents.

(1) The State Board of Health of Missouri is an administrative and not a judicial body, and its acts are subject to review by the courts. And mandamus is the proper procedure for such review. State ex rel. v. Board of Health, 103 Mo. 29; State ex rel. v. Lutz, 136 Mo. 633; Board of Health v. People, 102 Ill. App. 616; State ex rel. v. Goodier, 195 Mo. 560; State ex rel. v. Adcock, 206 Mo. 550. (2) Under the laws of this State the State Board of Health has no authority to adopt and promulgate fixed rules and regulations as the standard by which the various medical colleges of this State will be adjudged reputable or non-reputable within the meaning of the statute relating to the practice of medicine and surgery. The word "reputable" as applied to medical colleges means reputation and must be proven in the same way. State ex rel. v. Lutz,

136 Mo. 639; State Board v. People, 123 Ill. 227; State ex rel. v. Chittenden, 112 Wis. 584; People ex rel. v. State Board, 110 Ill. 180. (3) Where the acts of the State Board of Health are oppressive, arbitrary, manifestly unjust and against the weight of the evidence, relief will be granted by the courts where such instances are brought before the courts in a mandamus proceeding. State ex rel. v. Board of Health, 103 Mo. 29; State ex rel. v. Lutz, 136 Mo. 633; Board of Health v. People, 102 Ill. App. 616; State ex rel. v. Adcock, 206 Mo. 550; State ex rel. v. Lutz, 136 Mo. 639; State Board v. People, 123 Ill. 227; State ex rel. v. Chittenden, 112 Wis. 584; People ex rel. v. State Board, 110 Ill. 180.

WOODSON, J.—This was a proceeding in mandamus, instituted in the circuit court of the city of St. Louis, at the June term thereof, 1908, by relators against respondents and appellants to compel the latter to examine them, touching their qualifications and fitness to practice medicine and surgery in the State of Missouri.

An alternative writ was issued and duly served upon respondents, who, in due time, filed their return thereto. A trial was had, which resulted in findings for relators, and a judgment making the alternative writ of mandamus theretofore issued permanent, etc. After taking proper steps in that direction, respondents duly appealed the cause to this court.

In order to properly understand the issues joined and the legal propositions presented to us for determination, it will be necessary for us to set out the pleadings filed in the case.

The petition was as follows (formal parts omitted):

"The State of Missouri, at the relation of James Wesley Abbott, Charles Horace Cullers, Elmer Lee Cox, William S. Clarenbach, John Ulysses Day, Claude

Emerson Duvall, Francis Howard Emmons, Florence Ourat Egers, Emily Statella Fluesmieir, Orion Asbury Grantham, William Gregory Gunn, Joseph Taylor Griest, William Walton Haven, William Francis Hager, Louis Phillip Habig, Charles Louis Mosley, Jr., Martin Mehrle, Nina Henry Maynard, Edna Jane Miller, Amalie Marie Napier, Mary Myrtle Ozias, Nicholas John Pippert, Peter Alois Pfeffer, George Earl Paullus, Bert Byrd Parrish, Leslie Cornelius Randall, Oda Lavinia Seabaugh, Howard Workman and Hugh Benjamin Waters, complains of the defendants, J. A. B. Adcock, A. H. Hamel, Ira W. Upshaw, W. S. Thompson, R. H. Goodier, J. T. Thatcher and Frank J. Lutz, constituting the State Board of Health of Missouri, and says that defendants now, and at all the dates hereinafter mentioned, were the duly appointed and acting members of the State Board of Health of Missouri, and constitute said board, and as such board it is their duty, among other things, to examine all qualified persons who appear before such board at such time and place as the said board may direct, to determine the fitness of such persons to engage in the practice of medicine and surgery in this State.

"Relators state that the Barnes University of St. Louis, Missouri, was, on the 11th day of June, 1892, and is now, a body corporate and politic, organized under and by virtue of the laws of the State of Missouri, regulating the incorporation of benevolent, religious, scientific and educational institutions, and that said Barnes University, in accordance with the provisions and requirements of its charter of incorporation, and the laws of this State, ever since its incorporation, has been engaged and is now engaged in the teaching of medicine and surgery, and those sciences the knowledge of which is necessary and proper for a full and adequate understanding of the science of medicine and surgery in all its scope and meaning.

"Relators state that they are citizens of the State

of Missouri, and that on the 9th day of May, 1908, they and each of them were duly graduated by the Barnes University aforesaid, and that on the 9th day of May, 1908, relators and each of them received a diploma from said Barnes University, and that thereupon they and each of them became, and ever since has been, and now are, graduates of medicine from said institution.

"Relators state that, at the time of their matriculation, in said university, about four years ago, they were advised by reputable physicians and surgeons in whose judgment they had confidence, that the said Barnes University was a reputable school of medicine, of high standing in the community where it is situate, and elsewhere, and that relators, and each of them, relied upon the information thus acquired, and therefore entered said university and took up the course of study therein prescribed, and relators state that during all the period of their course of study at said institution they believed that said Barnes University was a reputable institution, and further believed they would be accorded the same rights by the defendant board as graduates of other reputable medical colleges in this State. And relators now charge the fact to be that said institution is reputable, that its curriculum is well selected and thorough; its instructors and lecturers among the best, and that the course therein required to be pursued by its students is as thorough as that of any other institution of like kind in this State or elsewhere.

"Relators state that, on the — day of ——, 190—, defendants appointed Prof. R. C. F. Dunhaupt, as official examiner of defendant board of the city of St. Louis, to act in the place and stead of the county school commissioners of the various counties throughout the State, and that by said appointment and authority then and there vested in him by said board in its interpretation and construction of the laws of

this State, it became the duty and right of the said Dunhaupt to examine into the scholastic attainments of such persons as might appear before him for that purpose, and to certify to said board whether or not such persons satisfactorily passed an examination before him equivalent to a grade from an accredited high school, state normal school, college, university or academy. Relators state that they did appear before the said Dunhaupt and underwent an examination before him upon all branches then and there submitted to them, and received from the said Dunhaupt a certificate certifying that they and each of them had satisfactorily passed an examination before him and had procured a grade upon such examination equivalent to a grade from an accredited high school, state normal school, college, university or academy.

"Relators further state that on or about the — day of May, 1908, they and each of them executed and filed with the defendant Board of Health the regular official form of application for examination, provided by said board, wherein they requested to be examined by said Board of Health at the St. Louis University, in the city of St. Louis, Missouri, on the first, second and third days of June, 1908. Relators further state that they and each of them attached to said application and delivered to defendant, in connection with said application for examination, the sum of fifteen dollars, that being the usual, customary and regular fee required by said Board of Health from all persons desiring to take a medical examination before said board; that said applications, and each of them, were accompained by the certificate of the said Dunhaupt, certifying that the scholastic attainments of the relators, and each of them, were satisfactory, and that in said examination relators, and each of them, had obtained a grade equivalent to a grade from an accredited high school, state normal school, college, university or academy, and that said application was accompanied

by a diploma issued to the respective relators by the said Barnes University, and relators state that said application was also accompanied by the affidavits of the said Dunhaupt, showing the grade and proficiency of each of the relators, actually shown, and fairly and justly earned by each of said applicants upon said examination before the said Dunhaupt, and that said application was also accompanied by a certificate of graduation of each of the relators, from an accredited high school, state normal school, college, university or academy.

"The relators further state that the defendant board found the certificates of the said Dunhaupt to be genuine and essential in particulars, and such as is customarily and universally acted upon and accepted by said board, and that relators were the persons named in the respective certificates, and that each of the said diplomas issued to each of the relators by the said Barnes University, and presented to the defendants herein, were found by the said defendants to be genuine diplomas, and that relators are the same persons whose names appear in said respective diplomas, and that relators were the rightful owners and holders thereof and the persons named therein.

"Relators further state that they complied in all particulars with all the usual and customary requirements exacted by said board, but that notwithstanding relators' compliance therewith, defendants returned said filing fee to relators, and to each of them, but retained their applications, which said applications are now on file among the records of the defendant.

"Relators allege that defendants then and there, arbitrarily and oppressively, advised relators that they would not be allowed or permitted to take an examination before the defendant board, for the purpose of procuring a license to practice medicine in this State, and defendants assigned as an alleged reason for their refusal to permit relators to be examined, that said

Barnes University was not 'an accredited school by the Missouri State Board of Health.'

"Relators further state that on the morning of the first day of June, 1908, and prior to the beginning of the examination of applicants before said board, for the purpose of procuring certificates entitling them to practice medicine and surgery in this State, the relators, and each of them, presented themselves before the defendant board, then being in session at the St. Louis University in the apartment where the said board was preparing to hold an examination, and relators then and there notified defendants that they were there for the purpose of being examined by said board in order that said board might determine their fitness to engage in the practice of medicine and surgery in this State, and in the event they passed a sufficient and satisfactory examination that they be delivered a certificate under the hand of said board, authorizing the relators, and each of them, to engage in the practice of their chosen profession.

"Relators state that on said first day of June, they were ready, willing and able to furnish, and then and there did offer to furnish to said board, satisfactory evidence of the qualifications of each of the relators, to said defendants, of their preliminary qualifications, to-wit, certificates of graduation from an accredited high school, state normal school, college, university or academy, and a certificate from the said Dunhaupt certifying that they, and each of them, had satisfactorily passed an examination before him equivalent to a grade from an accredited high school, state normal school, college, university or academy, and that relators were also ready and willing to furnish, and able to furnish a certificate of graduation to each of said relators from an accredited high school, state normal school, college, university or academy, and were then and there ready and willing to furnish, and offered to furnish said defendant board, satisfactory evi-

dence of having received diplomas from the said Barnes University as aforsaid; and relators also offered to comply with all the requirements of the law made necessary as a condition precedent to their examination by said board, and offered to, and were able to comply with all the usual, ordinary and customary requirements heretofore made by said board, but relators allege that after defendants had proceeded with the examination, for the space of one day, of the persons who then and there appeared before them, including relators, for the purpose of undergoing an examination to determine whether or not they were capable and fit to receive a certificate from said board, for the purpose of enabling them to practice medicine and surgery in this State, that said board, on the second day of said examination, then and there directed, ordered and commanded all the graduates of the said Barnes University to withdraw from the room where said examination was about to be commenced and conducted, and the defendant board then and there announced that the relators, and each of them, would not be permitted or allowed to take said examination, and in the event that the relators, or any of them, should refuse to leave the room, and should insist on taking said examination, that their papers would not be graded or considered by said board, but would be thrown out into the waste basket; and that thereupon the relators, over their protest, and in violation of their rights, were forced and compelled by defendants to withdraw from said room, and were then and there and thereby deprived and denied the privilege of taking the examination before said board.

"Relators, on their information and belief, state that defendants, without authority or color of law, have devised and promulgated a set of rules and regulations as a standard of equipment, and a method of instruction and laboratory work which the defendants arbitrarily and oppressively insist must be complied with

by said Barnes University, before its graduates are entitled to undergo an examination before said board, and before said board will consider the same to be a reputable medical college. But relators state that said board did not notify said Barnes University, or the board of trustees, or faculty thereof, or these relators of such rules, regulations and requirements; and failed and arbitrarily refused to allow said Barnes University, and its board of trustees and faculty, an opportunity to show said board what its equipment and teaching facilities were and are; that relators had been registered as regularly matriculated students of said university, and of the medical department thereof, for a period of over four years, and defendants could have easily obtained access to said registration and have informed the relators, and each of them, as to any action upon its part with reference to its estimate of the standing of said Barnes University, but the said defendants failed and neglected to do so.

"Relators state that Barnes University aforesaid is a reputable medical college of this State; that its curriculum requires a course of four years' attendance before graduation therefrom; that it is provided with a corps of experienced, proficient and learned and profound lecturers, teachers and instructors, and is also provided with such apparatus as is necessary for the successful teaching and exemplification of the science of medicine and surgery; and that in all of its departments the said institution compares favorably with, and is, and has been, equal to the best institutions of the kind in this and other states; and the said university, for fifteen years last past, has been recognized by the various state boards of health of Missouri as being a reputable medical college, and has been recognized by defendants, individually and as a board, as being reputable and thorough in all respects.

"Relators allege that they, and each of them, demanded of the defendants, as such State Board of

Health of Missouri, the right and privilege of forthwith undergoing an examination upon all the subjects embraced by the laws of the State, touching their qualifications in medicine and surgery, in order that said board might determine whether relators, and each of them, possessed the requisite knowledge and qualifications to obtain a license to practice medicine and surgery, in accordance with the law of this State, but that defendants, and each of them, wrongfully, unreasonably, oppressively, arbitrarily, and without color of authority, refused and still wrongfully, unreasonably, oppressively and arbitrarily, and without any cause, refuse to allow the relators, or any of them, to appear before said Board of Health, and then and there undergo an examination before said board, in order that said board might determine whether or not they were entitled to engage in the practice of medicine and surgery in this State.

"Relators further allege that they, and each of them, cannot practice medicine or surgery in this State unless and until their competency to engage in that profession has been submitted to and passed upon by said board, and that by the refusal of the defendants to permit the relators to undergo such an examination, they have suffered, and are suffering irreparable wrong and injury, and are entirely without a remedy for the redress of their wrongs without the interposition and intervention of this court by its writ of mandamus, directed to said defendants, and each of them, commanding and directing the performance and discharge of their duty under the law of this State.

"Wherefore, relators pray this Honorable Court to issue its writ of mandamus directing and commanding the defendants, as the State Board of Health of Missouri, to forthwith permit the relators, and each of them, to appear before said board and undergo the usual examination accorded to other applicants before said board, touching the relators' qualifications to

practice the science of medicine and surgery in this State, and that this Honorable Court will frame and issue such writ or writs as may be found necessary and expedient to cause said board to do that which in justice and right ought to be done in the premises.''

The alternative writ followed the petition and was in the ordinary form, and, after service thereof was had upon the respondents they filed the following return (Formal parts omitted):

''Come now J. A. B. Adcock, A. H. Hamel, Ira W. Upshaw, W. S. Thompson, R. H. Goodier, J. T. Thatcher and Frank J. Lutz, constituting and comprising the State Board of Health of the State of Missouri, and for their joint and separate return to the writ of mandamus heretofore issued in this cause, say that the relators ought not to have a peremptory writ of mandamus herein, for the following reasons, to-wit:

''1.  The defendants state and say that they have no information or knowledge as to the truth of the statements and allegations set forth and contained in relators' petition, and the alternative writ herein, and, therefore, deny generally each and every allegation therein set forth and contained, except that they admit that they were at all times therein mentioned, and now are, the duly appointed, qualified and acting members of the State Board of Health of the State of Missouri, and constituting and comprising said board.

''2.  Defendants further state and say that the Barnes University and Medical College, from which relators profess to have been graduated and hold diplomas, was, and is, not a reputable medical college of four years' requirements, as provided and required by the said State Board of Health, in their schedule of requirements adopted July 11th, 1907, and defined in section 3 of 'An act to regulate the practice of medicine, surgery and midwifery, and to prohibit treating the sick and afflicted, without a license, and to provide

penalties for the violation thereof,' of the Acts of 1907, State of Missouri.

"3. That on July 11th, 1907, the defendants herein, in pursuance of a report of a committee of said Board of Health, duly authorized and appointed to investigate as to the equipments and facilities for teaching of the various medical colleges throughout the State, provided and adopted a schedule of minimum requirements as a standard by which medical colleges should be rated and classified as accredited and reputable, and whose students, after being graduated therefrom, should be admitted to the examination of the said State Board of Health for licenses to practice medicine and surgery in the State of Missouri, and further provided and directed that any and all medical colleges, in meeting the requirements of said schedule, should be given until October 1, 1907, in which to supply and provide such deficiencies, and to bring their said schools or institutions up to the standard required; and that each and every medical college so notified complied with the requirements therein specified, save and except the Barnes University and Medical College, and that the Barnes University and Medical College was, by authority of the said State Board of Health, on the 22nd day of July, 1907, duly notified and apprised of its deficiencies in said behalf, and requested to provide the facilities necessary and required to bring said institution up to the standard as provided by said board; that said Barnes University and Medical College, through its officers and agents, ignored said request and failed and refused to obey the instructions of said State Board of Health, and to supply and provide the necessary facilities by way of equipments, laboratory work and clinical instructions, and have wholly ignored the same. That thereafter, on October 28th, 1907, the said Barnes University and Medical College was again duly notified and reminded of its failure to supply the deficien-

cies in laboratory equipments as required by said
State Board of Health, and given until November 21st,
1907, in which to comply with said rules and require-
ments; and was duly notified that unless said defi-
ciencies be supplied within said time said Barnes Uni-
versity and Medical College would not be accredited,
and its students not be entitled to examination for li-
censes to practice medicine and surgery in the State
of Missouri; that said schedule or standard was rea-
sonable, fair and proper, and the requirements made
upon said Barnes University and Medical College
were reasonable, just and proper, and were not op-
pressive upon said institution, and could have been
supplied and provided with but little difficulty and
expense to said institution.  That each and every other
medical college in the State of Missouri complied with
said schedule, standard and requirements, save and
except the said Barnes University and Medical Col-
lege.  Defendants further state that said institution
again ignored and disregarded the requests of the said
State Board of Health, and failed and refused to com-
ply with the same.  That said requirements so made
of the Barnes University and Medical College as afore-
said, and the schedule and standard adopted by the
said State Board of Health were such as the said State
Board of Health had authority under the law to re-
quire, make and provide; and that it was the duty of
the said Barnes University and Medical College to
comply with the same and to conform its said curric-
ulum to the standard prescribed; and it was the duty
of the said State Board of Health to refuse to recog-
nize the said Barnes University and Medical College
as an accredited and reputable medical college and to
examine its students after graduation, upon its fail-
ure to comply with the same and conform to the stand-
ard prescribed.

"And the defendants further state that the author-
ity to determine what was, and is, an accredited and

reputable medical college in this State was conferred upon them by the Legislature and the laws of this State; that they have investigated the matter in question, and have determined, as they have a right under the law to do, that the said Barnes University and Medical College was not, and is not, an accredited and reputable college within the meaning of said law; this being true said decision is final, and not subject to review by this court.

"Wherefore, defendants say by reason of the premises, plaintiffs should not have peremptory writ herein, but that the same should be denied, and the costs hereof taxed against the plaintiffs."

On July 27, 1908, relators filed in said court in said cause (omitting caption and signatures) the following reply:

"Come now plaintiffs, and for their joint and separate reply to the return of defendants, made herein to the writ of mandamus heretofore issued in this cause, say that said return constitutes no defense and sets forth no reason why a peremptory writ of mandamus should not go herein.

"For another and further reply, plaintiffs deny each and every one of the statements and allegations set forth and contained in said return.

"For another and further reply, plaintiffs say that defendants have—without authority or color of law—devised, adopted and promulgated the schedule of requirements referred to in defendants' return herein, and that defendants have arbitrarily and oppressively devised and promulgated said schedule of requirements and made the same the standard by which medical colleges in this State shall be rated and qualified as reputable—within the meaning of section 3 of 'An act to regulate the practice of medicine,

surgery and midwifery, and to prohibit the treating of the sick and afflicted without a license, and to provide penalties for the violation thereof,' as amended in the Acts of 1907, State of Missouri; and that because, in the opinion of said State Board of Health, said Barnes University has failed to comply with the requirements of said schedule, said State Board of Health has arbitrarily and oppressively refused to allow plaintiffs to be admitted to the examination of said State Board of Health for licenses to practice medicine and surgery in the State of Missouri, in direct violation of their authority and duties, under the law of the State of Missouri made and provided in such cases.

"For further reply, plaintiffs specifically deny that said State Board of Health did, on or about the 22nd day of July, 1907, or any time subsequent thereto, duly notify and apprise said Barnes University of said schedule and requirements, or that it had adopted any schedule of requirements at all to determine whether said Barnes University was a reputable college—within the meaning of said act.

"Plaintiffs further state that the laboratory apparatus and equipment of said Barnes University was equal to or greater than that prescribed in said schedule of requirements adopted by said State Board of Health, and that in all other respects—the length of term, method of instruction, and the other requirements entitling its students to a diploma—said Barnes University complied with, equalled or exceeded the requirements contained in said schedule adopted by said board.

"And plaintiffs further aver and charge the fact to be that other persons were admitted by the State Board of Health to take its examination for the purpose of procuring licenses to practice medicine and surgery, which said persons held diplomas from med-

ical colleges which had not complied with said requirements of said schedule so adopted by said board.

"Plaintiffs further state that, at the time said schedule was adopted and promulgated by said board, they, and each of them, had already entered upon their fourth year of study in said Barnes University, and that the requirements—as set forth in said schedule— relate to instructions given during the first three years of the course of medicine in said Barnes University, and that in this respect the course of study in said Barnes University conforms with that of all other reputable medical colleges; and that said State Board of Health has, for a great many years up to and including June, 1907, permitted the graduates of said Barnes University to take its said examinations for the purpose of procuring licenses to practice medicine and surgery, and plaintiffs further aver and charge the fact to be that the laboratory equipment and facilities for teaching medicine and surgery in said Barnes University were better during the session which closed in May of 1906 than any previous session of said college.

"Plaintiffs further state that a large number of them have been admitted to examinations by the state board of other states, and received licenses to practice medicines and surgery in said State."

The facts of the case are comparatively few, and practically undisputed; and they are substantially as follows:

On and prior to the institution of this suit the Barnes University, an institution of learning, was duly organized and incorporated under the laws of the State of Missouri, and was authorized, among other things, to teach and instruct persons in the science of medicine and surgery. During the same time appellants constituted the State Board of Health, having been duly appointed and qualified as such,

and were acting in that capacity during that time. Relators were regularly graduated from the medical department of said university of the class of 1908, and each held a diploma issued therefrom in the manner and form provided for by its charter and by-laws. Subsequently thereto each of the relators in proper time and in due form filed his application for an examination by said board, to be held on the first, second and third days of June, 1908, touching his qualifications to practice medicine and surgery in this State, as provided for by the Act of 1907 (Laws 1907, p. 360), accompanied by a certificate from Prof. Dunhaupt, the official examiner of said board, showing he possessed the requisite scholastic attainments, together with a deposit of the proper license fee of $15.

Prior thereto, to-wit, on July 11, 1907, said board formulated and adopted the schedule of minimum requirements as a standard by which medical colleges should be rated and classified as accredited and reputable,  as referred to in the petition, and whose students, after being graduated therefrom, should be admitted to the examination of the said board of health for licenses to practice medicine and surgery in this State; and provided further that all such colleges should have until October 1, 1907, in which to comply with said minimum requirements, and to bring their said schools up to said standard. All medical colleges of the State complied with said requirements except said Barnes University. On July 22, 1907, after an investigation made, but before the date fixed, said board notified said university of its failure to comply with said standard. Either for a valid or invalid excuse said notice was ignored by said university. On October 28, 1907, said university, still neglecting to bring its standards up to the requirements of the board, was again notified of said deficiency, and was again requested to bring its medical department up to said standard, on or before November 21, 1907, and

notified that unless it did so it would not be so accredited, and its diploma would not entitle its students to an examination for licenses to practice medicine and surgery in this State. Said school again declined to comply with said requirements, which will be noticed during the course of the opinion.

There is no pretense that the standard fixed by the board was arbitrary or unreasonable, or unjust, or oppressive.

In pursuance to their applications filed for examination, as before stated, relators appeared before said board, in the city of St. Louis, on said first, second, and third days of June, 1908, and requested that they be given the examination, as provided for by said Act of 1907, but none of them offered any evidence whatever to said board tending to show that the medical department of said Barnes University was a reputable medical college as provided for by said act. Thereupon the Board of Health declined to examine any of them, and returned to them their said diplomas, certificates and license fees.

This suit is predicated upon those facts.

I. Counsel for appellants insists that the judgment of the trial court is erroneous, for the reason that relators furnished no evidence to the Board of Health tending to show that Barnes University was a reputable medical college at the time they graduated therefrom, as required by section 3 of an act approved April 4, 1907 (Laws 1907, p. 359). Said section, in so far as it is material to the propositions involved in this case, reads as follows:

"All persons desiring to practice medicine or surgery, in this State, or to treat the sick or afflicted, as provided in section 1 of this act, shall appear before the State Board of Health at such time and place as the board may direct, and shall there be examined as to their fitness to engage in such practice. All persons

appearing for examination shall make application, in writing, to the secretary of said board thirty days before the meeting. They shall furnish satisfactory evidence of their preliminary qualifications, to-wit: A certificate of graduation from an accredited high school or state normal school, college, university or academy, a certificate from the county school commissioner, certifying that they have satisfactorily passed an examination equivalent to a grade from an accredited high school or state normal school, college, university or academy. They shall also furnish evidence of having received a diploma from some reputable medical college of four years' requirements at the time of graduation.''

By reading that section of the act it will be seen that it requires three things of each applicant who desires to be examined, touching his qualifications to practice medicine and surgery in this State, namely: first, that he shall make application in writing to the secretary of the board thirty days before the meeting thereof; second, that he furnish to the board satisfactory evidence of his scholastic qualifications, as therein provided for; and, third, that he shall also furnish to the board satisfactory evidence of having received a diploma from some reputable medical college of four years' requirement at the time of his graduation.

The act mentioned does not undertake to state what medical colleges are or what are not reputable within the meaning thereof; but by clear implication it leaves that question for the determination of the Board of Health. This is made manifest by the act requiring the proof of reputableness to be furnished to the board when the applicant presents himself for examination, and by withholding from the board the authority to issue the license until such *satisfactory* evidence is furnished. There is no pretense in this case that relators or any of them furnished or offered to furnish any evidence whatever

tending to show that the Barnes University, the one from which they had graduated and from which they held their diplomas, was a reputable medical college within the meaning of that act. In our opinion the language of this act is susceptible of no other construction than that it placed the burden upon the relators, when they presented themselves for examination before the board, to prove to its satisfaction by satisfactory evidence the reputableness of Barnes University, and especially the medical department thereof.

In the consideration of a similar statute to ours, the Supreme Court of Wisconsin, in the case of State ex rel. v. Chittenden, 112 Wis. l. c. 584, used this language: "The learned circuit court erred in holding, as it seems to have done, that every time a person presents himself before the board as a candidate for a state license to practice dentistry, tenders his dollar, presents his diploma, and makes proof of the statutory requisites for the granting of his application, other than that of the reputability of the school graduating him, it is the duty of the board to make an original investigation of and determination as to that subject, by direct evidence of the character of the school at the time of the candidate's graduation, regardless of whether any evidence on the question is tendered by him or any request is made for such investigation. The burden in such case is on the candidate to demonstrate to the satisfaction of the board the reputability of his *alma mater*, not on the board to establish or disprove it. If he (relator) had accepted that burden and offered proof to show that his *alma mater* was reputable, doubtless the board would have received and considered it in connection with all other information in its possession. Where the facts are so easily ascertainable as they were in this case, . . . assuming, as we must, that the board would be actuated . . . by the single desire to deal justly, . . . lapse of time after one investigation

sufficient to allow a new class of graduates to come from the school would secure a reinvestigation if that was requested, accompanied by a reasonable showing of a material change in regard to the matters in which it was found deficient upon the previous investigation.'' The Wisconsin statute simply left the reputableness of the applicants' *alma mater* to the examining board, and did not, as does this act, expressly require the applicant for a license to furnish satisfactory evidence thereof to the Board of Health. See Laws of Wisconsin 1901, chap. 306, p. 418.

And in reference to a similar question, the Supreme Court of Ohio said: ''Nor do we find any provision which makes it the duty of the board to determine in advance of an application for a certificate to practice medicine, whether a person holds a diploma from a medical institution of the proper standing. It is only when a diploma is presented upon such application that the action of the board can be invoked.'' [State ex rel. v. Coleman, 64 Ohio St. l. c. 387.]

The Ohio statute, like the one in Wisconsin, merely submitted the question of reputableness to the board, without requiring the candidate for examination to furnish any evidence. That fact adds force to those rulings when we apply them to the case at bar, for the reason that our statute, in express terms, places the burden of satisfying the Board of Health of the reputableness of the school of which the candidate is a graduate.

If that was all that there is in this case, then we could properly reverse the judgment, remand the cause, quash the alternative writ of mandamus and direct the circuit court to dismiss the suit; but that is not all that is presented by the record, and presented by counsel for determination.

II. If we correctly understand the position of counsel for relators, they do not controvert the sound-

ness of the conclusions reached in the previous paragraphs, but contend that "under the laws of this State the State Board of Health has no authority to adopt and promulgate fixed rules and regulations as the standard by which the various medical colleges of this State will be adjudged reputable or non-reputable within the meaning of the statute, relating to the practice of medicine and surgery. The word 'reputable' as applied to medical colleges means reputation and must be proven in the same way." The following authorities are cited in support of that contention: State ex rel. v. Lutz, 136 Mo. l. c. 639; Illinois State Board v. People ex rel., 123 Ill. 227; State ex rel. v. Chittenden, 112 Wis. l. c. 584; People ex rel. v. Ill. State Board, 110 Ill. 180.

In our opinion counsel for relators misconceive the meaning and object of the rules and regulations adopted by the Board of Health fixing the standards by which various medical colleges would be adjudged reputable, within the meaning of the act under consideration. That rule simply provides that all medical colleges, wherever located (and not simply those situate in this state), which should on or before October 1st, 1907, conform to the standards specified in the schedule of minimum requirements, adopted by the board on July 11th, 1907, "should be rated and classified as accredited and reputable, and whose students, after being graduated therefrom, should be admitted to the examination of the State Board of Health for licenses to practice medicine and surgery in the State of Missouri," without being required to furnish other proofs of reputableness, and thereby save each of them the time, cost and expense of furnishing the proofs required of them by said act. In other words, the board, by said rules, undertook to require all medical colleges to adopt such standards as would establish and prove their reputableness in all cases, and thereby remove those burdens from each student who

applied for a license, as provided by said act. But said rules of the board do not provide that no graduate from any medical college which had not conformed to those requirements should not be examined touching his qualifications to practice said professions.

This construction of that rule seems to have been adopted subsequent to the origin of this controversy, and not prior thereto. Evidently the framers thereof entertained no such idea, for there is no such intention expressed in the rule itself. Neither the rule nor the board is responsible for this erroneous construction.

In our opinion, since the act left it to the board to pass upon the reputableness of all medical colleges, whose graduates applied to it for examination, and to determine the character of the evidence by which said fact was to be established, said rules were not only reasonable and just but were also wise and proper. All medical colleges and their students were thereby notified in advance as to what would satisfy the board as to the reputableness of each college. The diploma alone from all colleges which had adopted those standards would entitle the holder thereof to take the examination without further ado. Otherwise many students might innocently be induced to attend colleges which were not, in fact, reputable, and consequently said students would thereby be prevented from establishing their reputableness. In all such cases a great hardship would be visited upon all such graduates, but under these rules of the board no injustice could be done to any college or to any graduate thereof.

Beyond that, the adoption of said standards by the board, if the colleges will only conform thereto, would have a direct tendency to uplift and better medical instruction, place the State's institutions of learning upon a higher plane, and reduce the practice of medicine and surgery to a more perfect science, all of which

would result in great good to suffering humanity.

But suppose, for argument's sake, we are in error in our views before expressed regarding the meaning and object of said rules of the board establishing said standards, and that it was the intention of the board to thereby notify, in advance, all persons who might present themselves for examination for licenses to practice medicine and surgery, that it would examine no one except those who presented a diploma from some one of the medical colleges which had adopted said standards. Still, that would no more excuse the applicant for examination from tendering to the board such evidence as he might have, tending to prove that his *alma mater* was a reputable school within the meaning of said act, than would the adoption of a rule by a judge upon the bench, promulgated a year in advance, to the effect that on and after a certain date he would try no case except where the plaintiff held a certificate from a minister of the Gospel stating that he belonged to a church which believes in and teaches the Christian religion, would excuse the plaintiff from offering whatever evidence he might have tending to prove his case, even though he held no such certificate. Both, such rules of the board and of the court, would be illegal and void, and would constitute no legal bar to the applicant's right to stand the examination for his license, nor to the plaintiff's right to have his case tried according to law. Nor could the adoption of such a rule of the board or by court be construed to mean that the board in the one case, or the court in the other, had thereby refused and determined not to examine a particular person for a license to practice medicine, or to try a particular case filed in said court. Such a board or such a court might change its mind before the date fixed arrived, and before either was called upon to act in a concrete case. As long as a man or a body of men fill any official position, the law

presumes he or they will perform their duties whenever any matter is legally presented to them for action, notwithstanding general declarations previously made to the contrary. This is true for the obvious reason that no officer can legally act or illegally decline to act until a matter is legally presented to him, calling for his official action in the premises.

It is only where some rule, ordinance, statute or other rule of conduct is relied upon in a particular case conferring or withholding some legal right can the courts or litigants question their validity. They may be unconstitutional, null and void, or invalid for any other reason, still that fact would be no excuse for a person's refusal or declination to perform some duty imposed upon it or him by some other valid law. This was expressly held in the case of State ex rel. v. Taylor et al., 224 Mo. 393, decided by this court In Banc, at its last sitting. There the constitutionality of an act was questioned because one section thereof provided, that before the remonstrators against the organization of drainage districts would be permitted to contest its validity, they must first give bond for costs, etc. The court there held that the unconstitutionality of said statute was no excuse for said defendant's declination to appear and defend against said proceedings. The same is true in the case at bar, for the reason that if the rules of the board establishing the standards for medical colleges are absolutely void, still that fact would be no excuse for a graduate therefrom, applying for examination for a license to practice medicine, to refuse to furnish satisfactory proof of the fact that his *alma mater* was a reputable school, as he is required to do by said Act of 1907. So, it must follow that it is wholly immaterial as to what was the general intention of the board in that regard so long as these particular relators omitted to furnish or offer to furnish any such evidence, and so long as the board had not

refused to act in their particular case. Until that was done there was no just cause for saying the board had declined to perform its official duties, as was shown by the rulings made by the Wisconsin and Ohio courts.

In no such case had the board been legally or properly called upon to examine the applicant touching his qualifications to practice medicine and surgery; and until such demand is made and such proofs are furnished the board is under no legal obligation to examine him or any of them.

So, under either view of the case, whether we consider the rules of the board valid or invalid, relators are not entitled to have the alternative writ of mandamus made peremptory, for the reason that the board has not been legally called upon to give them the examination which they ask this court to compel it to give them.

It is elementary that a writ of mandamus will not issue commanding an inferior court, tribunal or ministerial body to act until it is first established by the evidence that said court, tribunal or ministerial body has been legally requested to act, and that it has illegally declined to do so. This court in the case of State ex rel. v. Associated Press, 159 Mo. l. c. 421, in passing on this question, said: "It is fundamental in the law of mandamus that it is indispensable to granting the writ that a prior express and specific demand be made of respondent of that which relator seeks, and that a refusal of such demand occurred before relator has any standing in court, or his application for the writ contains any ground for relief."

We are, therefore, clearly of the opinion that the judgment of the court making the alternative writ of mandamus peremptory was erroneous.

III. The relators are not without remedy, if they possess the necessary qualifications to practice medicine and surgery in this state. If they possess

the necessary scholastic attainments and diplomas from some reputable college, and if they can produce before the Board of Health satisfactory evidence of the reputableness of said college, then doubtless the board will, upon proper request, give them an examination, as provided for by the Act of 1907, and, if found qualified, the board will presumably issue to them licenses to practice medicine and surgery in this State; but, if after such showing the board should unjustly and arbitrarily refuse or decline to examine relators, it would then be time enough to institute mandamus proceedings against the board, requiring it to act in the premises. [State ex rel. v. Adcock, 206 Mo. 550.]

The judgment is reversed, and the cause remanded with directions to the circuit court to quash the alternative writ of mandamus heretofore issued by it, and to dismiss relators' petition. All concur, except *Lamm, J.*, who dissents.