STATE OF MISSOURI ex rel. T. F. FRAZER, W. C. BOWMAN, and MATT THOMAS, Judges of the County Court of Scott County, Relators, v. R. L. BUCK, Respondent.

Springfield Court of Appeals, July 10, 1914.

1. **OFFICERS: Auditing Books: Statutory Provisions: Right to Possession of Books.** An examiner appointed by the State Auditor under the provisions of Laws of 1913, page 765, *held* entitled to the possession and rightfully in possession of a county collector's books on the day of the filing with the auditor of the petition of the taxpayers for the auditing of the books, though the examiner had gone to the county seat prior to that time in anticipation of the filing of such petition

2. **COUNTY OFFICERS: Auditing Books of: Authority for: Possession.** Even if under the provisions of section 3781, R. S. 1909, a county court has authority to audit and examine the books of a county collector, notwithstanding Laws of 1913, page 765, authorize the auditing of such books by examiners appointed by the State Auditor upon request of the county court or three hundred taxpaying citizens, yet the county court was not entitled to the possession of the books for that purpose where the books were in possession of an examiner appointed by the State Auditor pursuant to petition as provided by Laws 1913, page 765.

3. **MANDAMUS: Books of County Officers: When Mandamus Will Not Lie to Compel Delivery.** County court *held* not entitled to mandamus to compel delivery of county officers' books for auditing purposes, where an examiner appointed by the State Auditor, under the Laws of 1913, page 765, was rightfully in possession thereof at the time demand was made and after the examiner had completed his work the demand was not renewed.

4. **OFFICERS: Books of: Statutory Provisions for Auditing.** The provisions of Laws 1913, page 766, comprehend the entire field of providing for the examination of county records, regardless of whether the county court or the required number of taxpayers is responsible for the examination; and that part of section 3871, R. S. 1909, which incidentally gives county courts power to employ private accountants is by the Laws of 1913, page 766, repealed. (Per FARRINGTON, J.).

## MANDAMUS.

PEREMPTORY WRIT DENIED.

*James A. Finch,* and *R. E. Bailey,* for relator.

*Arthur L. Oliver* and *Ernest A. Green,* for respondent.

ROBERTSON, P. J.—The respondent is county collector and the relators are judges of the county court of Scott county. On June 2, 1913, an accountant submitted a proposal to the county court to audit and examine the books of the county clerk, circuit clerk, treasurer, collector, sheriff, probate judge and re-

corder, for a period of ten years prior to June 1, 1913, and also certain drainage districts from the date of organization, and to place six accountants on the work at $7.50 per day for each man plus their expenses. This poposal was accepted by an order of the county court then in session and the accountant instructed to begin work on June 9, 1913. On June 9th the county court accepted the bond of said accountant in the sum of three thousand dollars and two of the judges of the county court, the accountant and an attorney proceeded to the office of respondent and demanded of him his books for the purpose of examination for which the accountant had been employed. The respondent refused to deliver the books to the judges for the alleged reason that said books were then in the possession of an examiner sent there from the office of the State auditor in pursuance to a petition signed by more than three hundred taxpaying citizens of Scott county, calling upon the State auditor to audit the books, pursuant to an act passed by the Legislature (Laws of 1913, page 766).

On June 16, 1913, when the court was in session, relator Frazer, the presiding judge of said court, presented a written motion that the former proceedings of that court bearing upon the contract made with the special accountant be quashed, repealed and for naught held, and that the order be entered setting aside the former record; which motion was overruled, the presiding judge dissenting.

At the same session an order was entered, over the objection of the presiding judge, as follows: ''The county officers whose books and records the county court had decided to examine having refused to allow the court and its expert accountants to inspect or examine their books, we appoint J. A. Finch and Ralph E. Bailey as attorneys in this case and the prosecuting attorney, John B. McWilliams, be directed to aid them to enforce the decisions of this court by bring-

ing the necessary legal proceedings against the said officers.'' Subsequently the prosecuting attorney was relieved from any duty imposed upon him by law to proceed in behalf of the two county judges.

Thereupon, on September 16, 1913, the relators instituted this proceeding in this court, having for its object the enforced surrender of said books by respondent to them. Upon the return being filed and the issues of fact raised, this court appointed Hon. Ralph Wammack of Bloomfield commissioner to take testimony and to report the same with his findings of fact, which he has done.

The report of the special commissioner discloses, in addition to what has already been stated, that on June 7, 1913, the petition to the State auditor requesting him to make an examination and audit of the books and papers of the several officers of Scott county, as provided by law, was circulated and on the following day sent to the State auditor and received by him on the morning of June 9, 1913, and that he, anticipating the circulation of said petition, on June 7th appointed an examiner and sent him to Scott county to be in readiness to make the examination should said petition be signed and filed with him; that on the morning of the 9th of June, the said examiner, being then at Benton, the county seat of Scott county, was advised by the State auditor, before any demand was made upon the officers of the county by the county court, that the required petition was then upon file in the State auditor's office; thereupon the examiner proceeded to take charge of the books and papers to make an audit of the same, and thereafter an audit of the books and papers pertaining to the various officers of the county was made in pursuance of the proceedings thus instituted by the State auditor on June 9th. Some time prior to the date of the petition of the taxpaying citizens one of the judges, other than the presiding judge of the county court, had been in correspondence with

the State auditor relative to an examination of the county books by him.

On October 6, 1913, the special accountant sought to be employed by the county court requested the surrender of his bond, which request was granted and his bond ordered returned to him. On the following day the county court allowed the account of the examiners from the State auditor's office, with the exception of a few small items and except the entire account of the examiner who was sent there on the 9th of June, stating that "the court takes the position that Mr. Clay when directed to come to Benton, there was then no petition from the taxpayers of Scott county in the hands of State auditor, and performed no service in said examination."

The relators insist that on the morning of June 9th the examiner from the State auditor's office was not properly in charge of the books, that the petition of the taxpayers was not then in the State auditor's office; but the finding of the commissioner, which is amply justified by the testimony, disclosed that it was. We think that it is a matter of no importance that the examiner may have been sent there prior to the date when the petition was received at the State auditor's office because the authority of the parties hereto must be determined as of June 9th, when the controversy arose. The State auditor had authority to appoint an examiner on June 7th irrespective of any petition, as his appointment was not specifically for this particular work, and when he was at the county seat of Scott county on the 9th and the petition being then properly on file in the State auditor's office, the State auditor had the authority to order him to proceed, which he did, with the examination of the books in pursuance of the petition and he had possession of the books for the purposes of examination at the time the county court sought to obtain them.

The relators contend that by virtue of the proviso at the conclusion of section 3781, Revised Statutes of 1909, that the county court is entitled to possession of the books of the county officers upon its request therefor as against any examiner sent by the State auditor in possession of the books and acting under said Act of 1913. On the other hand, the respondent insists that the Act of 1913 repealed by implication the above proviso in said section 3781 and also raises the point that mandamus will not lie under the facts in this case.

Since where the county or a State officer is a party to a suit we have no appellate jurisdiction (Constitution, section 12, article 6, made applicable to additional court of appeals by section 4, article 6, Amendment of 1884) and consequently no original jurisdiction (State *ex rel.* v. Social Club, 169 Mo. App. 137, 148) and both are indirectly, if not directly, involved here, we deem the prudent course to pursue is to not discuss this phase of the controversy since there are other points involved that are as equally decisive of the case.

The relators assume that the proviso to Section 3781 and the Act of 1913 must both stand and, that being true, that it necessarily follows that the county court may, which we do not decide, proceed when it sees fit to an examination of the books of the county officers and also that the State auditor has the authority upon the proper preliminary request therefor to likewise proceed to an examination of the books and to establish a uniform system of accounting, and such being the situation, on the theory of the relators, it becomes essential only that we ascertain and determine whether or not the State auditor had proceeded upon a petition of the taxpayers and had the books in his possession before the county court demanded the same of the respondent and if so to decide whether the county court is entitled to maintain a proceeding of

this character to compel the officer to surrender the books to it.

It appears to us, the facts being as above found, that a statement of the proposition suggests its own answer. The authority of the State auditor to make an examination of the county books, we consider evident, and assuming that the county court also retains the power to do so, it would evidently be improper to say that when either had proceeded upon this examination and had the books in charge for that purpose, that any court should interfere and dispossess the party rightfully in possession of such books. To hold otherwise would be making a farce of the administration of the county affairs and the laws of this State and trifling with the county officers. If the county, as the relators contend, possesses the authority therefor, it may, after the State auditor completes his work, proceed with such an examination as it desires to make. There is no showing or suggestion here that after the State auditor had completed his work that the respondent would have resisted any effort on the part of any of the judges of the county court, or of any accountant employed by it, to examine his books. It also appears from the report of the commissioner that the examination made by the State auditor, a copy of which is required by the Act of 1913 to be filed with the county court, was entirely satisfactory and the expense thereof, with a few minor exceptions not affecting the merits of the case, was paid by the county court and we are unable to understand the necessity for this court ordering the respondent to do a useless thing.

According to the State auditor's testimony his work was completed in from thirty to forty-five days after it was begun, so that the reason assigned by the respondent for not delivering the books to the relators on June 9th did not exist for over a month prior to the institution of this action, and there is no proof

that any other demand was made upon him for the books; consequently, as we have held that at the time the demand was made the respondent was justified in then refusing to surrender the books, assuming relators' construction of the effect of the Act of 1913 to be correct, and since a subsequent period elapsed thereafter and before the filing of the suit, when this condition was removed, it was then incumbent upon the relators, before instituting this suit, to renew their demand. [State ex rel. v. Lesueur, 136 Mo. 452, 459, 38 S. W. 325; State ex rel. v. Associated Press, 159 Mo. 410, 421, 60 S. W. 421; State ex rel. v. Adcock, 225 Mo. 335, 364, 124 S. W. 1100.]

It follows that the peremptory writ should be denied at the cost of the relators, except relator Frazer, over whose protest the proceedings were instituted, and it is so ordered. *Sturgis, J.,* concurs. *Farrington, J.,* concurs and files a separate opinion.

## CONCURRING OPINION.

FARRINGTON, J.—I concur in the opinion of Robertson, P. J., for the reasons therein given, and for additional reasons which I shall state.

The real intent and purpose of that provision of section 3781, R. S. 1909, is that county courts are given power to examine and audit the books of county officers, with which power incidentally is given the right to employ expert accountants and auditors for that purpose. That section of the statute does not attempt to specify who those accountants shall be, but leaves it to the county court to choose. The purpose of that provision is to delegate the power to audit, and the agency through which it is done is merely incidental to that power. The Act of 1913 (Sess. Acts, 1913, pp. 765-768 including thirteen sections) undertakes to deal with the entire field of auditing and examining the books and records of public officers, both State and

county. The title of the act signifies that much—witness: "Examination of Books, Accounts, Settlements and Statements of State Institutions, County Officers, and to Provide a Uniform System of Bookkeeping."

This act in no way repeals the power to examine and audit heretofore vested in the county courts by section 3781, R. S. 1909, but in fact recognizes such authority. By the Act of 1913 the Legislature for the first time created an examining board under the supervision of the State auditor, the State officer whose duties necessarily put him in closer touch with the records of the county officers than any other. The duties of the examiners are prescribed as *examining, auditing,* etc., the books, accounts, settlements and statements of both State and county officers. The act provides that these examiners shall, when called upon by a county court or on petition of three hundred taxpaying citizens of any county, examine the books and records and accounts of the county's officers. It shall be done, of course, subject to the limitation that it be done not more than once each year. This limitation expresses the view of the Legislature that once a year is often enough to sufficiently safeguard the public. To give this act the construction contended for by the relator places no limitation on the number of examinations that can be made nor any check on the amount the county may be made to pay for such work, and in this connection it will be noted that the Act of 1913 fixes the *per diem* charge for examination which a county is to pay the State examiners. The act fixes the salary at two thousand dollars per year for three examiners, and the salary is paid—for what? The act says: To audit and examine "the accounts of the various county officers of the State." If county courts can employ private agents to do this work at the expense of the county, there could arise a situation little short of ridiculous. The taxpayers of the State would be paying the three salaries of two thousand dollars each

year, and in case private accountants instead of the State examiners are called on by the county courts, the taxpayers would in addition to the salaries provided for be required to pay further sums possible far in excess of two thousand dollars per year, and the private accountants would be doing the work that the public examiners draw their salary to do. It being the first time the Legislature has undertaken to say who could examine the county records, and this act expressly repealing all previous acts or parts of acts not in conformity therewith, it seems to me to expressly repeal that part of section 3781, R. S. 1909, which only incidentally delegated the power to the county courts to name the accountants. What act or part of an act, other than section 3781, R. S. 1909, could the Legislature have had in mind in the repealing section (section 12) of the Act of 1913? It will be borne in mind that the power to have the books audited is not taken away from the county courts but is expressly confirmed in the later law. It is only the incidental power of naming the accountants that to me seems to have been limited. The Act of 1913 for the first time delegated the power to the taxpayers of a county (three hundred or more signing a petition) to have the books audited. The county court is merely the instrument of the people. It is a body formed to carry on the county's business and to protect the rights and interests of the people within their jurisdiction. If those for whom the work of auditing is ultimately to be done and those who are ultimately benefited can only call upon the *State examiners* for such service, it would not seem far out of reason that the county court acting for those people should be limited to the same examiners. The work done by the public examiners would tend to secure uniformity, economy, and good business, as well as amply protect the public, and these were the ideas the lawmaking body must have had in mind in passing the Act of 1913. I therefore construe the Act of 1913

as covering the entire field of who must examine county records regardless of who (whether county court or taxpayers) puts such examination in motion, and that that part of section 3781, R. S. 1909, which incidentally gives the county courts power to employ private accountants has been repealed.

It is held in the case of Smith v. State of Missouri, 14 Mo. 147, 152, that "a subsequent statute, revising the whole subject-matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must on the principles of law, as well as in reason and common sense, operate to repeal the former."

The Act of 1913 comprehends the entire field of providing for examination of the county records. In McGrew v. Railroad, 230 Mo. 1. c. 599, 132 S. W. 1076, is found this language: ". . . this court has repeatedly and properly held that 'a statute is impliedly repealed by a subsequent one revising the *whole subject-matter* of the first, and intending to substitute the latter for the former.'" And the case of Meriwether v. Love, 167 Mo. 1. c. 521, 522, 67 S. W. 250, has this language in the opinion: ". . . and as 'two pegs cannot fill the same hole at the same time,' so the old and new systems relating to the same subject, cannot stand in the body of the law at the same time, and as the old was found inadequate and the new covers all the old embraced and also supplies the deficiencies in the old, the result, logically and therefore legally, is that the Act of 1897 repealed section 2092, Revised Statutes 1889. [See, also: State v. Summers, 142 Mo. 586, 44 S. W. 797; State ex rel. Major v. Patterson, 229 Mo. 364, 129 S. W. 894; 1 Lewis' Sutherland Stat. Const. (2 Ed.), Sec. 247, p. 465.]

Relators cite Stone v. Bell (Nev.), 129 Pac. 458, but the question there decided was that a grand jury having the right to inquire into the willful and corrupt misconduct of public officers and to examine all

public records, had no power, even by the order of the district court to which it had to report, to hire expert private accountants. Anything else said in the course of the opinion in that case was beside the question there for decision. The other authorities cited by relators are no more persuasive.

The alternative writ of mandamus should be dismissed.