STATE OF MISSOURI ex rel. ARTHUR V. LASHLY, Prosecuting Attorney, Relator, v. GUSTAVUS A. WURDEMAN, Judge, Respondent.

**St. Louis Court of Appeals, April 7, 1914.**

1. PROSECUTING ATTORNEYS: Right to Represent County Judges in Mandamus Proceeding: Interest of County. A county is interested in a mandamus suit against the judges of the county court to compel them to hear and determine an application for a dramshop license, within Sec. 1008, R. S. 1909, providing that the prosecuting attorney shall prosecute or defend "all civil suits in which the county is interested," entitling the prosecuting attorney to appear in and control such suit.

   *Held* by REYNOLDS, P. J., dissenting, that the "interest" referred to in the statute, which the prosecuting attorney is required to protect, must appear in the pleadings, or,

if not so appearing, must be capable of being brought before the court by way of intervention by the county; and neither of these conditions obtaining in a mandamus suit against the judges of the county court to compel them to hear and determine an application for a dramshop license, and such a proceeding being against the judges as individuals, the prosecuting attorney is not entitled to appear in and control such suit.

2. ————: **Rights and Duties: Construction of Statute.** Sections 1007 and 1008, R. S. 1909, pertaining to the rights and duties of prosecuting attorneys, being *in pari materia*, are to be read together in determining the nature and extent of such rights and duties.

3. **STATUTES:** .Construction. Statutes which are *in pari materia* are to be read and construed together.

4. **INTOXICATING LIQUORS: Right of State to Control Sale.** The State may exercise its police power with respect to the sale of intoxicating liquor, because of its tendency to deprave public morals.

5. **MANDAMUS: Prosecuting Attorneys: Enforcing Right to Represent County Judges.** Mandamus lies to compel the circuit court to allow a prosecuting attorney to represent the judges of the county court in a mandamus proceeding brought against them, notwithstanding they refuse to give their consent to his representing them.
   *Held* by REYNOLDS, P. J., dissenting, that the action of the circuit court. in refusing to allow the prosecuting attorney to represent the county judges in a mandamus proceeding against them, in the absence of their consent to his so representing them, was the exercise of judicial discretion, which is reviewable on appeal, but not controllable by mandamus.

6. ————: **Action Against Court: Parties.** In a proceeding by mandamus to compel action by a court, while it is proper to direct the writ against the judges of the court by name, yet the office they hold is touched, if the action sought to be compelled is within the purview of such court.
   *Held* by REYNOLDS, P. J., dissenting, that the writ is not only to be directed to the person occupying the office, but the return must be made by him as an individual.

7. **COURTS OF APPEALS: Jurisdiction: Constitutional Question.** The Court of Appeals was not deprived of jurisdiction of a suit by mandamus to compel a circuit court to allow the prosecuting attorney of a county to appear in and control a suit brought against the judges of the county court of such county, because a constitutional question was raised in the

return filed by such judges in the circuit court, since the only question to be determined by the Court of Appeals was whether the prosecuting attorney was entitled to appear in and control such suit, and the merits of such suit were not involved, and since, also, the constitutional question raised by such judges is not to be treated as in the record, for the reason that the return was not made by the prosecuting attorney, who had the sole right to make it.

*Held* by REYNOLDS, P. J., dissenting, that a constitutional question having been raised by the return of the judges of the county court, the Court of Appeals was without jurisdiction.

8. **MANDAMUS: Amendment of Alternative Writ.** Where an alternative writ of mandamus is broader than the law warrants, it may be amended and a peremptory writ awarded for so much of the relief as is proper.

## Mandamus. Original Proceeding.

WRIT MADE PEREMPTORY. CAUSE CERTIFIED TO SUPREME COURT.

*Arthur V. Lashly,* Prosecuting Attorney, *George Barnett,* Assistant Prosecuting Attorney, and *E. R. Chappell,* Assistant Prosecuting Attorney, for relator.

*Sam D. Hodgdon, J. C. Kiskaddon, R. H. Stevens* and *F. E. Mueller* for respondent.

NORTONI, J.—This is a proceeding in mandamus. The alternative writ issued in virtue of the original power of this court in that behalf provided.

The relator is the prosecuting attorney of St. Louis county, duly elected and qualified. The respondent is judge of the circuit court of the same county and presides in division No. 2 of that tribunal. The question for consideration relates to, and the writ is invoked with a view of vindicating, the right of the prosecuting attorney to appear in the circuit court and defend a suit in which the county is interested.

The relevant facts out of which the controversy arises are as follows: It appears that one Hornberg presented to the county court of St. Louis county an

application for a dramshop license, in proper time and in due form, and the county court declined to consider or act upon it; that thereafter, on the same day, Hornberg sued out an alternative writ of mandamus against the judges of the county court, John Wiethaupt, William Buermann and Albert Wilmas, commanding them to appear in the circuit court, division No. 2, and show cause, if any they had, why they, as judges of the county court, should not proceed and act upon the petition of Hornberg for a dramshop license. To this mandamus proceeding so instituted in Division No. 2 of the circuit court, over which the respondent here, Judge Wurdemann, presides, the respondents in that proceeding—that is, the judges of the county court, Wiethaupt, Buermann, and Wilmas —made their return in writing through counsel other than relator, the prosecuting attorney of the county. Upon the coming in of the return of the judges of the county court in that case, relator, prosecuting attorney, appeared and moved the circuit court to permit him to assume control of the defense in the matter, on the ground that it was one in which the county was interested, and that, therefore, the statute made it incumbent upon him to do so. This motion and request the court denied, as though it were competent for the county judges to exclude the prosecuting attorney with respect to the matter of the defense of that case and employ other counsel to control and manage it. It is in assertion of his right to control and manage the defense of the mandamus suit pending in the circuit court against the judges of the county court with respect to the subject-matter of the application of Hornberg for a dramshop license that the prosecuting attorney, as relator, sued out the writ of mandamus here involved, and it is insisted the respondent, as judge of the circuit court, denied to him a clear legal right in refusing to permit the prosecuting attorney

to assume control and manage the defense of that case.

In disposing of the question in judgment, it is essential to consider the relevant sections of the statute prescribing the duties of the prosecuting attorney, and to consider, too, the interests involved in the mandamus suit pending in the circuit court against the judges of the county court of St. Louis county.

It is to be said, first, that under the statutes both the judges of the county court and the prosecuting attorney are elected by the people of the county and with a view of serving its inhabitants in the discharge of the duties annexed by law to the respective offices of county court and prosecuting attorney. The office of the county court and of the prosecuting attorney are, of course, separate and independent and neither is necessarily subservient to the other. The county court consists of three judges, elected by the people, but its members are not required to be learned in the law, while one of the qualifications prescribed for the prosecuting attorney is that he shall be so learned. By statute, certain judicial duties and certain other ministerial and administrative duties are committed to the county court, while other statutes commit certain duties which appertain to the profession of a lawyer to the prosecuting attorney as the law officer of the county. In respect of the latter, sections 1007 and 1008, R. S. 1909, are to be here considered.

''The prosecuting attorneys shall commence and prosecute all civil and criminal actions in their respective counties in which the county or State may be concerned, defend all suits against the State or county, and prosecute forfeited recognizances and actions for the recovery of debts, fines, penalties and forfeitures accruing to the State or county; and in all cases, civil and criminal, in which changes of venue may be granted, it shall be his duty to follow and prosecute or defend, as the case may be, all said causes, for which,

in addition to the fees now allowed by law, he shall receive his actual expenses. When any criminal case shall be taken to the courts of appeals by appeal or writ of error, it shall be their duty to represent the State in such cases in said courts, and make out and cause to be printed, at the expense of the county, and in cities of over 300,000 inhabitants, by the city, all necessary abstracts of record and briefs, and if necessary appear in said court in person, or shall employ some attorney at their own expense to represent the State in such courts, and for their services shall receive such compensation as may be proper, not to exceed twenty-five dollars for each case, and necessary traveling expenses, to be audited and paid as other claims are audited and paid by the county court of such county, and in such cities by the proper authorities of the city.'' [Section 1007, R. S. 1909.]

''He shall prosecute or defend, as the case may require, all civil suits in which the county is interested, represent generally the county in all matters of law, investigate all claims against the county, draw all contracts relating to the business of the county, and shall give his opinion, without fee, in matters of law in which the county is interested, and in writing when demanded, to the county court, or any judge thereof, except in counties in which there may be a county counselor. He shall also attend and prosecute, on behalf of the State, all cases before justices of the peace, when the State is made a party thereto: *Provided,* county courts of any county in this State owning swamp or overflowed lands may employ special counsel or attorneys to represent said county or counties in prosecuting or defending any suit or suits by or against said county or counties for the recovery or preservation of any or all of said swamp or overflowed lands, and quieting the title of the said county or counties thereto, and to pay such special counsel or at-

torneys reasonable compensation for their services, to be paid out of any funds arising from the sale of said swamp or overflowed lands, or out of the general revenue fund of said county or counties." [Section 1008, R. S. 1909.]

It is to be observed that section 1007, above copied, makes it the duty of the prosecuting attorney to defend all suits against the State or county, and, indeed, it is conceded in the instant case that, if the mandamus proceeding in the circuit court against the three judges of the county court were a suit against the county, no one could deny or gainsay the right of the prosecuting attorney to control and manage the defense therein. Touching this question, it is said in the brief of respondent, "If an action is brought against the county, the prosecuting attorney can defend it and no county court has power to compel him to act otherwise than his judgment dictates. He can also institute an action for the county and in his conduct of the case he is absolutely independent of all control." We quote this as a concession in the argument here, but it is said it does not apply to the instant case, in which the prosecuting attorney insists upon his right to appear.

In Kansas, the statutes concerning the county commissioners and the county attorney are similar to those which obtain with respect to our county courts and prosecuting attorney. The matter of a suit against the county of Leavenworth being under consideration in that State, the Supreme Court stated the doctrine precisely as we understand it, touching the question of the right of the county commissioners or the prosecuting attorney to control the case in court. Of this the court said, in Clough & Wheat v. Hart, 8 Kan. 487, 494:

"The county attorney is elected by the people of the county and for the county. He is the counsel for the county, and cannot be superseded or ignored by

the county commissioners. His retainer and employment is from higher authority than the county commissioners. The employment of a general attorney for the county is not by the law put into the hands of the county commissioners, but is put into the hands of the people themselves. The county attorney derives his authority from as high a source as the county commissioners do theirs, and it would be about as reasonable to say that the county attorney could employ another board of commissioners to transact the ordinary business of the county as it is to say that the county commissioners can employ another attorney to transact the ordinary legal business of the county. Both would be absurd. It is the duty of the county attorney to give legal advice to the county commissioners, and not theirs to furnish legal advice to or for him.''

The doctrine of that case was affirmed in Waters v. Trovillo, 47 Kan. 197, 27 Pac. Rep. 822, and has never been questioned, so far as we have been able to ascertain. Other courts either quote and approve it, or proceed in the same view on fundamental reasons, as will appear by reference to the following cases in point: Board of Comm'rs of Logan Co. v. Jones, 4 Okla. 341, 51 Pac. Rep. 565; Board of Comm'rs of Logan Co. v. State Capital Company, 16 Okla. 625, 86 Pac. Rep. 518; Brome v. Cuming County, 31 Neb. 362, 47 N. W. 1050; Clark & Grant v. Lyon County, 37 Ia. 469.

But in the instant case, St. Louis county is not a party to the record in the mandamus proceeding pending in the circuit court against the judges of the county court, in which the prosecuting attorney insists upon his right to appear, and the right asserted here by the prosecuting attorney proceeds on the ground that, though not a party, the county is ''interested'' in that suit. This is true, it is said, because, though the judges of the county court are respondents in the man-

damus against them, the suit proceeds to enforce the performance of a public duty on the part of the county court, of which they are members, pertaining to the matter of the dramshop license petitioned for on the part of Hornberg. In an early case in this court, the prosecuting attorney of the same county declined to permit the use of his name in a *certiorari* proceeding against the county court to remove and review the record of a dramshop proceeding, for that he deemed it his duty, under the statute, to represent the interests of the county, through appearing for the county court in the matter, and this court affirmed such to be the correct view of the duty of the prosecuting attorney. [State ex rel. v. Heege, 37 Mo. App. 338, 345.] Obviously such is the sound law of the question, for, though the judges of the county court themselves are respondents in the mandamus suit pending in the circuit court, it is clear the county is interested therein. The statutes (sections 1007 and 1008) are to be read together for they are *in pari materia* and pertain alike to the duties of the prosecuting attorney, which they annex to his office, and the officer is required by virtue of his oath to perform them. While section 1007, in so far as its consideration here is essential, applies more particularly to cases in which the county is concerned and suits against it, section 1008 imposes a duty on the prosecuting attorney in respect of all civil suits in which the county is "interested."

It is clear that the county is interested in a civil suit in mandamus directed against the judges of the county court by which it is sought to compel them, through utilizing the franchises of their office, to issue a dramshop license in favor of any citizen, authorizing him to sell intoxicating liquors in the county. In respect of this matter, it is to be said the judges of the county court, as individuals, apart from their office and the franchises which inhere in it could confer no privilege under the law, and it is only because of their

office as county judges that they may be compelled
to act thereon at all, and this is true though the writ
runs against them as judges of the county court, rather
than against the office of the county court *eo nomine.*
The idea is to compel the judges, as individuals in
whose hands the franchises pertaining to the office are
accumulated, to exercise the powers of the office in
acting upon the application for a dramshop license
and thus proceed in the performance of a public duty
affixed by statute. To say that St. Louis county is
not even interested in such a proceeding involves but
a partial view of the subject-matter. Under our stat-
utes the county is pecuniarily interested in the matter
of dramshop licenses, for a portion of the revenue re-
ceived therefor goes into its treasury.

Moreover, since the case of Austin v. State, 10
Mo. 591, the sale of intoxicating liquors has been
deemed unlawful in Missouri, because of its tendency
to deprave public morals, and because of this fact the
police power is to be exercised with respect to it. Un-
der the statute, only a law-abiding, assessed, tax-pay-
ing male citizen above twenty-one years of age may be
licensed as a dramshop keeper at all. By other stat-
utes, the dramshop keeper, though licensed, may be
prosecuted for infractions of the law touching the sale
of liquors as for misdemeanors, and the duty pertain-
ing to such prosecutions is within the purview of the
county as the unit of government. Then, too, the
statutes expressly recognize and confer the right upon
tax-paying citizens of the county to remonstrate
against the issue of a dramshop license and thus en-
deavor to prevent the opening of such a place in the
immediate locality. No one can doubt that these pro-
visions obtain in the view that a dramshop tends to
corrupt the morals of the people and entail injury
through the depreciation in value of private property
near or about it. When it is remembered the county
is the unit of government with respect of such matters,

it appears to be clear enough that it is interested in a civil suit against the judges of the county court, which proceeds with a view of enforcing them, *ex officio,* to act upon an application for a dramshop license. Therefore, the county being interested in the subject-matter of the mandamus suit against the judges of the county court, the statute (Sec. 1008) imposed the duty upon the prosecuting attorney to control and defend that case. His right no one can dispute, for the statute pointedly prescribes and affixes it as a duty upon him in all cases in which the county is interested, and this, too, in addition to the duties affixed by the prior section (1007) where the suit is against the county.

But it is said the mandamus against the judges of the county court of St. Louis county is a personal proceeding against them and does not run against the court as the representative of the county. The case of State ex rel. v. Burkhardt, 59 Mo. 75, is urged upon us in support of this view. But it is obvious the question suggested was not decided there. It appears in that case that both a school district and Moniteau county claimed certain money, taxes collected, and then in the hands of the collector of taxes for the county. The school district sued out a mandamus against the county collector to enforce the payment to it. The county collector made his return to the writ, by which he set forth the controversy about the money in his hands, as though he were a mere disinterested stakeholder, and prayed that the county of Moniteau might be heard by its prosecuting attorney in that case. Thereupon the county, by its prosecuting attorney, filed what was termed an "interplea" to be *made a party to the mandamus suit* against the collector. It is to be noted from this that the return of the county collector was in the nature of a bill of interpleader, whereby it was sought to bring the several claimants for the fund before the court *and as parties to the action,* to the end of acquitting him of responsibility·

while such claimants litigated the subject-matter. Then, too, in the interplea filed, Moniteau county prayed the issuance of a peremptory writ of mandamus commanding the county collector to pay the money to the county. On a hearing the circuit court gave judgment dismissing the "interplea" of Moniteau county and awarded a peremptory writ of mandamus to the relator—that is, the school district—against Burkhardt, the collector, commanding him to pay the relator the sum of $280.89. From this judgment the county perfected its appeal to the Supreme Court, but the respondent collector did not, and it was there ruled the county had no standing in court in that case.

Manifestly, this judgment was a proper one, for the case was neither one of interpleader nor was it competent for the county to become a party thereto in the manner pursued. The court declared, and the rule is well established by numerous decisions to the same effect since that case, that "the general provisions of the practice act, authorizing all persons having or claiming an interest in the subject-matter of the controversy to be made parties plaintiff or defendant, do not apply to proceedings by writ of mandamus," and this alone is the substance of the decision. However, in that case, the Supreme Court recognized the subject-matter as one in which the county was interested and said, "the county, through its prosecuting attorney, with the consent of the defendant, Burkhardt, might, in a return in his name, have urged as a defense most, if not all, the matters set out in the petition filed by it in the cause." But though the court said that, as the county was interested in the matter, the prosecuting attorney might, "with the consent of Burkhardt," set forth its claims in a return of the respondent, Burkhardt, it did not decide *either that it was not the duty of the prosecuting attorney to do so or that he could not do so without the consent of Burkhardt.* The county being interested

in the subject-matter there involved in the mandamus between the school district and the county collector, it was certainly competent for it to be heard in the case, and this, too, by utilizing the name of its officer, the collector, in making its defense in the return preferred by him.

Moreover, it is true, too, as the court said, that the prosecuting attorney could set forth the county's claim with the consent of Burkhardt, the collector, in the return of that officer, but the mere fact that the court said this could be done with his consent does not conclude the matter to the contrary, for that was all it became necessary for the court to decide in disposing of the controversy then in hand, in that no question was made with respect to the right of the county to utilize the collector's return without his consent. From a study of the case, it appears clear enough that the Supreme Court recognized the county was interested in the subject-matter of that suit and recognized, too, that it was competent for the prosecuting attorney to appear in its behalf and assert its defense touching the same, but the method pursued to do so was not a proper one under the practice act, for that no warrant appeared to enable the county to become a formal party to the suit; and as Burkhardt, the collector against whom the judgment in the circuit court was given, had not appealed, Moniteau county could not do so. In concluding the opinion, the court said, "Moniteau county cannot legally complain of a judgment rendered solely against another party, and this court has no authority whatever on the appeal of Moniteau county, to affirm or reverse that judgment."

This case in nowise decides that it is not the duty of the prosecuting attorney to appear in a mandamus case in which the county is interested. Neither does it decide that mandamus is purely a personal proceeding which may not touch the office when the officer is sued as such concerning the alleged failure to per-

form an official duty. On the contrary, it appears to hold that the office is touched, and because of this fact it is the duty of the prosecuting attorney to appear in such a case for the county and defend its interests. But to do so, the prosecuting attorney should set forth the county's defense to the mandamus against its officer in the return of the respondent county officer, as he seeks to do in the instant case. Obviously, if it be the official duty of the prosecuting attorney under the statute to thus appear, and one which he is sworn to perform, then its performance on his part cannot depend upon the consent of the respondent county officer in the mandamus, and such county officer should not be permitted to defeat the prosecuting attorney in the performance of his official duty by withholding consent to put the interests of the county forward in his return. The point is the Supreme Court did not decide that the prosecuting attorney could not set forth the interests of the county in the respondent collector's return without his consent, but decided that such officer's return was the proper pleading in which to set forth the interests and defend the county and merely remarked that he could do so with his (the respondent, collector's) consent, and no one will dispute the proposition thus stated.

The case of U. S. v. Boutwell, 84 U. S. 604, is also urged upon us in support of the argument that the writ of mandamus is purely personal and does not reach the office. That was a mandamus which proceeded against Boutwell, the secretary of the treasury, and after he resigned that office, the question presented related to the right to substitute Richardson, his successor, as respondent therein. The court denied this right on the theory that the duty sought to be enforced was a personal one to Boutwell and said, ''The writ does not reach the office.'' Though that case has been approvingly cited, a limitation on the doctrine

it asserts is now well recognized in subsequent cases in the same court.

In discussing the Boutwell case, the Supreme Court of the United States says, in Warner Valley Stock Co. v. Smith, 165 U. S. 28, 33, "The cases, in which it has been held by this court that an abatement takes place by the expiration of the term of office have been those of officers of the government whose alleged delinquency was personal and did not involve any charge against the government whose officers they were."

To the same effect is United States ex rel. v. Butterworth, 169 U. S. 600, where it is pointed out that the duty considered in the Boutwell case was one which, though omitted by a public officer, partook of a personal character in that it involved a discretion peculiar to him which might be otherwise exercised by his successor. Then, too, in Thompson v. U. S., 103 U. S. 480, the Boutwell case and the rule it reflects in respect of such personal duties is discussed and distinguished from such duties as appertain to and lie in such an office as a board of commissioners. As to such commissioners, it is said the duty savors rather of a public character and may be enforced even against their successors in office, and concerning this the court says, "To say otherwise would be a sacrifice of substance to form."

The case of Commissioners v. Sellew, 99 U. S. 624, was a mandamus involving the board of commissioners of a county in Kansas. It was argued, on the authority of the Boutwell case, that the writ of mandamus did not reach the office, but went alone to the members of the board of commissioners and was, therefore, purely personal in character. In answer to this, the court says, "One of the objects, in creating such corporations, capable of suing and being sued, and having perpetual succession, is that the very inconvenience which manifested itself in Boutwell's case

may be avoided. *In this way the office can be reached* and the officer compelled to perform its duties, no matter what changes are made in the agents by whom the officer acts. The board is in effect the officer, and the members of the board are but the agents who perform its duties. While the board is proceeded against in its corporate capacity, the individual members are punished in their natural capacities for failure to do what the law requires of them as the representatives of the corporation." (The italics are our own.)

These more recent cases in the Supreme Court of the United States are referred to merely to portray that the idea the proceeding in mandamus is personal in character is not to be extended beyond the sense of the rule, when to do so would sacrifice the substance of its efficacy to mere technical words or form.

However this may be, with us in Missouri, there can be no doubt on the question here in judgment, for the Supreme Court has pointedly determined it in a recent case, as will appear by reference to State ex rel. v. Fraker, 166 Mo. 130, 140, 65 S. W. 720. In that case the court says, "Ever since Platte County Court v. McFarland, 12 Mo. 166, *mandamus* has been regarded as the proper proceeding to compel a recalcitrant county court to do its duty. [See, also, Riley v. City, 31 Mo. App. 439.] Besides, the writ of mandamus, is, in modern practice, treated as an ordinary writ of right, issuable as a course upon proper cause shown."

It is true the proper practice is to direct the writ against the justices of the county court by name, as judges of the county court, but when this is done, as is true in the instant case, the office is touched if the subject-matter is one within the purview of that tribunal. [State ex rel. v. Fraker, 166 Mo. 130, 65 S. W. 720; Commissioners v. Sellew, 99 U. S. 624.] See, also, State ex rel. v. Gates, 22 Wis. 210, 214, where it is said on this subject, "So far as the advancement of

the principal remedy is concerned, it is to be regarded
as a proceeding against the officer, and not against the
individual." [See, also, State ex rel. v. Warner, 55
Wis. 271, 285, 286; People v. Collins, 19 Wend. (N.
Y.) 56; Maddox v. Graham, 2 Met. (Ky.) 56; People
v. Shout, 16 Johns, 60; Pegram v. Commissioners, 65
N. C. 114.]

Touching the argument that there is a constitu-
tional question involved in the mandamus suit pend-
ing between Hornberg, relator, and the county judges,
which precludes the jurisdiction of this court in the
present controversy, in which the prosecuting attor-
ney is relator, it is to be said that it is not sought to
invoke an order of this court in or pertaining to
the merits of that case. The only right sought to be
vindicated here is that of the relator, prosecuting at-
torney, to appear in his official capacity in the case
against the county judges as the duly elected and
qualified representatives of St. Louis county. More-
over, if the prosecuting attorney is the proper officer
to set forth the defense of the interests of the county
in that case, then the constitutional question asserted
is to be treated as not within the record in that case
at all, for the reason the proper officer of St. Louis
county to raise or prefer such question has not done so.
In other words, the return of the county judges, made
in their own behalf, through excluding the prosecuting
attorney from participation therein in behalf of the
county, is to be treated as without avail.

If it be true that the mandate of the alternative
writ is broader in its terms than the law warrants,
the question is not a serious one under the practice
which now obtains, for it is competent to amend it
and award the peremptory writ for so much of the
relief as is proper. [See State ex rel. v. Baggott,
96 Mo. 63, 71, 8 S. W. 737; State ex rel. v. Hudson,
226 Mo. 239, 264, 126 S. W. 733.]

State ex rel. v. Wurdeman.

Therefore, it appearing that it is the clear legal right of the prosecuting attorney to appear in and to control, manage, and defend the mandamus suit pending in division No. 2 of the circuit court of St. Louis county against the judges of the county court as such, the alternative writ of mandamus will be modified so as to vindicate this right only, and, as thus modified and amended, made peremptory to that extent alone. It is so ordered. *Allen, J.,* concurs. *Reynolds, P. J.,* dissents. Judge REYNOLDS deems the decision of the court contrary to the cases of State ex rel. v. Nortoni, et al., 201 Mo. 1, 98 S. W. 554; State ex rel. v. Burkhardt, 87 Mo. 533; State ex rel. v. Burkhardt, 59 Mo. 75; State ex rel. v. Fraker, 166 Mo. 130, 65 S. W. 720; State ex rel. v. Broaddus, 207 Mo. 107, 105 S. W. 629, and therefore requests that the cause be certified to the Supreme Court for final determination, and it is so ordered.

## DISSENTING OPINION.

REYNOLDS, P. J.—One Hornberg, on January 21, 1914, filed with the clerk of the county court of St. Louis county his petition, bond and affidavit for a dramshop license. These being duly presented to the county court, that court refused to try, hear, or determine the right of applicant to a license. Thereupon Hornberg filed a petition in the circuit court for a writ of mandamus against the judges of the county court to compel them to proceed in the matter of his petition and to hear, try and determine his right to a dramshop. This petition was duly assigned to division No. 2 of the circuit court of St. Louis county, over which the respondent here, the Honorable GUSTAVIUS A. WURDEMANN, presides. That judge,

apparently in open court, ordered an alternative writ
to issue commanding the judges of the county court
by name to proceed to hear, try and determine the
right of Hornberg to a license as a dramshop keeper
or to show cause why they should not so do. The judges
of the county court, over their own signatures, made
return to this alternative writ, admitting that Horn-
berg had filed his petition and application for a license
to keep a dramshop, together with his bond and affi-
davit with reference to the *ad valorem* tax, and that
it had remained on file for the time provided by law,
and that they had entered up an order refusing to
further hear, try and determine the right of Hornberg
to a dramshop license, because and for the reason that
the Legislature had passed a law, approved by the
Governor (Laws 1913, pp. 199-202), providing for the
appointment of a board of excise commissioners in St.
Louis county (setting the law out in full), "which act,
if constitutional, deprives this court of jurisdiction to
try, hear and determine applications and petitions for
dramshop licenses." That while not learned in the
law, they acted on the theory that it was a valid law
and had refused to act upon the application. On the
coming in of this return Hornberg filed a motion for
judgment on the pleadings, setting up that the law cre-
ating the board of excise commissioners was null and
void as special legislation in violation of section 53,
article 4, of the Constitution of Missouri. This re-
turn and motion, it appears, was filed in the circuit
court on February 5, 1914, and on application of relator
here the matter was passed until February 6th. On
that day, this relator presented his petition to the
circuit court, entitled, in the cause of State ex rel.
Hornberg, Relator, v. John Weithaupt, William Buer-
mann and Albert Wilmas, Judges of the County Court
of St. Louis County, Missouri, Respondents, setting
out that he is the duly elected, qualified and commis-
sioned prosecuting attorney within and for the county

of St. Louis and represents and shows to the court that the proceeding in the cause wherein Hornberg was relator and John Weithaupt, William Buermann and Albert Wilmas, Judges of the county court of St. Louis county, were respondents, is a civil suit, "in which the county of St. Louis is interested and that under and by virtue of the laws of the State of Missouri it is his right and duty to appear herein in behalf of the respondents, as judges of the county court and to attend to all matters pertaining to this proceeding for and on behalf of the respondents. That respondents have refused to permit your petitioner to file a return to the alternative writ heretofore issued herein for and on their behalf and refused to consult with him concerning the matters of law and fact connected with this proceeding and have refused to furnish him with any information about it. That he was not consulted about and had nothing to do with the preparation and filing of the paper heretofore filed herein purporting to be the return of John Weithaupt, William Buermann and Albert Wilmas to the writ directed to the same persons as judges of the county court. That the said pretended return was procured as a result of the connivance and collusion between the relator and respondents. That the relator has an undue influence over the respondents and that by the exercise of the said undue influence respondents were induced to and did employ other counsel than your petitioner to prepare and file the said pretended return with the sole purpose in view of preventing your petitioner from preparing a proper return to the writ herein and from taking any part in this proceeding. That the pretended return does not properly present the issues of law and fact arising in the case and that unless your petitioner is permitted to present a proper return raising all the said issues the process of said court will be abused and the ends of justice perverted.

"Now, therefore, your petitioner prays that the pretended return of the said John Weithaupt, William Buermann and Albert Wilmas be stricken from the files for the following reasons, to-wit:

"First. That it fails to state that it is made by respondents as judges of the county court and is therefore not responsive to the writ.

"Second. That the said pretended return was procured by collusion between the parties.

"Third. That it does not properly present the issues of law and is not a correct statement of the facts.

"Fourth. That your petitioner was not permitted to prepare the said pretended return or consulted with reference thereto.

"Your petitioner further prays that an order may issue directing him as the legal adviser of the county court and of the judges thereof in their official capacity to prepare and file a proper return to the alternative writ herein for the reason that it is by law made the duty of your petitioner to represent the respondents in suits of this character and that your petitioner is the only person authorized by law to so represent them. Your petitioner further prays that the document heretofore filed herein, entitled 'Motion for peremptory writ' be also stricken from the files for the reasons above set forth."

On that day, February 6, the respondent here, Hon. G. A. WURDEMANN, as judge, and during the session of the court, having before him this motion of the prosecuting attorney, denied it, the court, however, granting relator here permission to appear "as a friend of the court" in the hearing of the cause.

On the forenoon of that day, however, and before the motion of the prosecuting attorney had been filed and acted upon by the circuit court, the prosecuting attorney presented his petition to one of the judges of our court and that judge issued the alternative

writ, it being recited in the petition for the writ that
the relator had before then presented his motion or
petition to the circuit court and that his petition had
been denied.   In point of fact it appears that the
motion or petition had not been presented to and de-
nied by the circuit court when application was made
to us for the issue of the alternative writ.   That oc-
curred afterwards, the alternative writ being served
on the circuit judge on the same day but after that
court had acted.   The return having been duly filed
in our court to the alternative writ, relator moved
for judgment.   The cause has accordingly been sub-
mitted to us on the writ and return.

It is settled law in this State that a writ of man-
damus "will not issue commanding an inferior court,
tribunal or ministerial body to act until it is first
established by the evidence that said court, tribunal
or ministerial body has been legally requested to act,
and that it has illegally declined to do so."  [State ex
rel. Abbott et al. v. Adcock et al., 225 Mo. 335, l. c.
363, 124 S. W. 1100.]   Here the lack of demand and
refusal to act prior to presentation of the application
of the petition for the writ is clear, but on that being
suggested by counsel for respondent, on the coming
in of the return, the Honorable Judge, respondent
here, in person and in open court, waived this defect,
on our suggestion that we would, if it was insisted
upon, quash the alternative writ and issue a new one.
So that the question that the application to us was
premature and our writ issued prematurely, is out of
the case.

It is clear that if the return of the county judges,
as made by them, is to remain in the case, a constitu-
tional question is presented in this case by that and
by the motion for judgment on it, interposed in the
circuit court by the relator in that case; indeed the
return of the judges discloses that a constitutional

question was presented in the county court. So that under the decision of our Supreme Court in State ex rel. Sale v. Nortoni et al., Judges, etc., 201 Mo. 1, 98 S. W. 554, we would have no jurisdiction in this cause. If, however, that return is withdrawn by the relator here and a · new return is made with that question entirely eliminated, the majority of my associates are of the opinion that the cause is within our jurisdiction. Speaking for myself, and on the record before us, I cannot see how we can treat that return as a nullity, or that its withdrawal eliminates the Constitutional question. We have no power by mandamus to order the circuit court to strike that return out, even if we order that court to allow the relator here, as prosecuting attorney, to appear and conduct the Hornberg case for the judges of the county court. As said by our Supreme Court in State ex rel. Union Electric Light & Power Co. v. Grimm, 220 Mo. 483, l. c. 490, 119 S. W. 626, ''Of course, this court has no right or power in a proceeding by mandamus to direct what its ruling should be, but we have the right, and it is our duty, to require the circuit court to exercise its jurisdiction.'' But we cannot anticipate what the action of the court or of the prosecuting attorney will be, and I am unable to see, with all due deference to my brethren, how it is possible for us to shut our eyes to the fact that, as the case is presented to us, the constitutional question, that is, a question calling for the determination of a constitutional claim, is in the case. With that view of it, my own opinion is that the alternative writ should be quashed for want of jurisdiction in our court to issue it in this case at all. As to that, as I understand, I am in disagreement with both my learned brethren.

The fundamental question in the case, however, is the right of the prosecuting attorney of the county of St. Louis to require the respondent, as judge of the circuit court, to strike from the files the return

which has been made by the county judges, they themselves signing that return, and to allow him to appear in the case, draw up and file the return therein for these judges, even if contrary to their views, and manage and control all further proceedings in the case. That is the real point involved here, and that is the point to which my learned brother NORTONI has chiefly directed his opinion. I cannot agree to the view that the prosecuting attorney has this right. The relator claims the right to do this because the county is interested.

In the first place the county, as a county, is not a proper party to this proceeding. Our court has said, in Bell v. County Court, 61 Mo. App. 173, l. c. 176, that the alternative writ in that case had been directed to the county court; that this was error; that the writ should have run against the justices of the county court by name.

In State ex rel. v. Burkhardt, 59 Mo. 75, it is said (l. c. 78): "It is not perceived upon what principles, or by what authority the county of Moniteau was made a party to the original proceeding. The writ of mandamus is in form a command in the name of the State, directed to some tribunal, corporation or public officer, requiring them to do some particular thing therein specified, and which it has been previously determined that it is the duty of such tribunals or other person to perform." This same proposition was decided at an early date by our Supreme Court in Platte County Court v. McFarland, 12 Mo. 166. There it appeared that the cause then before the court was docketed as one against the county court of Platte county, and was a proceeding against the county court to compel that court to perform its duty respecting the opening of a public road. It appears by the statement of the case that McFarland and others, being the commissioners to survey and mark out a State road, made a report of their proceedings to the county

court, filing a report of their survey. This report was rejected by the court for its alleged irregularity and further time was given the commissioners to make a new report. On the coming in of this latter, certain objectors resisted it and the county court again refused to receive it. On this the commissioners sued out a writ of error from the circuit to the county court. That writ was directed to the justices of the county court. On the return of the writ to the circuit court, it appears that the cause was docketed as one against the county court and on the hearing of it the judgment of the county court, rejecting the report of the commissioners, was reversed by the circuit court and a judgment for costs rendered. On this judgment a writ of error was sued out from the Supreme Court. Says Judge Scott, speaking for the Supreme Court (l. c. 168), in disposing of the contention that the writ should have been directed to the county court, not to the justices: "It is impossible to discover any principle on which the county court of Platte could have been made a party to the writ of error."

The statutes relating to the duties of the county attorney or prosecuting attorney (sections 1007, 1008, Revised Statutes 1909), are set out by my brother Nortoni, so that it is not necessary for me to repeat them in full. They expressly provide that the prosecuting attorneys "shall commence and prosecute all civil and criminal actions in their respective counties in which the county or State may be concerned, defend all suits against the State or county," etc., and that he "shall prosecute or defend, as the case may require, all civil suits in which the county is interested, represent generally the county in all matters of law, investigate all claims against the county, draw all contracts relating to the business of the county, and shall give his opinion, without fee, in matters of law in which the county is interested, and in writing when demanded, to the county court, or any

judge thereof.'' I find nothing in these statutes which throws upon him the duty of acting in court for the judges of the county court, when not required by them to so act; he is required to give his opinion in writing to the county court or any judge thereof, only ''when demanded.'' Here the relator avers that his opinion was never asked in this matter; that he was never consulted. I find no authority in law which requires the county judges, even the county court, to demand and secure his opinion before acting, or on his giving his opinion to act only as he advises. Suppose a claim against the county is before the county court for action. The prosecuting attorney resists it and advises and argues against its allowance. Will it be pretended that the county court must determine the cause as he suggests? That would be to assert a new doctrine in Missouri. I find in the omission from the statutes of any command on the judges of the county court to be controlled by the written opinion of the prosecuting attorney, a distinct legislative expression of intention, that this is a matter which is to be left to the county judges; is one of the responsibilities of their official position. For if it is true that the judges of the county court are compelled, willy-nilly, to accept the opinion of the prosecuting attorney on a matter submitted to them, the responsibility of the judges would entirely disappear and the will and the opinion of the prosecuting attorney, an adviser merely of the court, would be substituted for the opinion of the judges of the county court.

In many matters, and especially in the most material matters relating to the issuance of dramshop licenses, these judges act judicially. That in acting judicially they are to be controlled by the prosecuting attorney would surely be a new doctrine in our State. That they do act judicially in many matters and in the final act of granting the license, see, among other cases, State v. Evans, 83 Mo. 319; State ex rel. Smith v.

County Court of Platte Co., 83 Mo. 539; State ex rel. Campbell v. Heege, 37 Mo. App. 338, l. c. 346; State ex rel. Pulliam v. Fort, 107 Mo. App. 328, 81 S. W. 476.

But it is said that the right of the prosecuting attorney to interfere in this matter and take charge of this litigation, is to be found in these words: "He shall prosecute or defend, as the case may require, all civil suits in which the county is *interested,* represent generally the county in all matters of law," etc. In point of fact, the claim made by the relator here, that as prosecuting attorney he has a right to control the proceeding rests solely upon the proposition that the county is *interested;* he does not, in so many words, claim that he is in all cases attorney for the judges. These cases of State ex rel. Gordon v. Burkhardt, State ex rel. Conran v. Williams, and State ex rel. Baker v. Fraker et al., are in point here, as I think, for the reason that they hold that having an interest does not authorize one to interplead or interpose in a proceeding by mandamus. As the relator asserts his right to control the mandamus upon the ground that the county has an interest in the proceeding, I think that these cases are against his claim. While it may be that the county and the people thereof are interested in the collection of the fees for dramshop licenses and in the issue of dramshop license, they have no more interest in that than in dozens of other matters pertaining to the general public. The interest referred to in the statute and which the prosecuting attorney is to protect, must appear in and by the pleadings, or, if not so disclosed, must be capable of being brought before the court by way of intervention by the county in a pending action. This may be done in any ordinary civil action. But while mandamus is now treated as a civil action, our statute (R. S. 1909, secs. 2146, 2555), being practically that of Queen Anne (9 Anne, Ch. 200), it is the settled law of this State that parties not of record, no matter what their interest, cannot

intervene in a proceeding by mandamus. That was expressly decided in State ex rel. Gordon v. Burkhardt, supra. In that case, at page 78, it is said, the writ having been addressed to Burkhardt, as sheriff and *ex officio* collector alone: ''The county had no right to make any return to an alternative writ not directed to it, if indeed the writ could be directed to a county as such. Under the statute, issues can only be made in this proceeding between the person to whom the writ is directed and delivered, and the party suing or prosecuting such writ. Although the county or the people of the county at large may have had an interest in the result of the proceeding, it could not be made a party thereto. The general provisions of the practice act, authorizing all persons having or claiming an interest in the subject-matter of the controversy to be made parties plaintiff or defendant, do not apply to proceedings by writ of mandamus. The county, through its prosecuting attorney, with the consent of the defendant, Burkhardt, might, in a return in his name, have urged as a defense most, if not all, the matters set out in the petition filed by it in the cause. Having been improperly permitted in the first instance to assert its claims to the funds in controversy in this action, no error was committed by the circuit court in dismissing its petition or interplea.''

In State ex rel. v. Williams, 96 Mo. 13, 8 S. W. 771, State ex rel. v. Burkhardt, supra, is expressly affirmed on this point, it being reiterated (l. c. 18) ''that the general provisions of the practice act allowing all persons having an interest in the suit to be made plaintiffs or defendants had no application to proceedings by mandamus. It is, therefore, clear that the return must conform to the common law rules; and this is none the less so because the relator may plead to or traverse all or any of the facts stated in the return.''

In State ex rel. Baker v. Fraker et al., Justices of the County Court, 166 Mo. 130, l. c. 142, 65 S. W. 720, the Burkhardt case and Williams case, supra, are cited approvingly as establishing as the law of this State, that "the provisions of the general practice act requiring all parties in interest to be made plaintiffs or defendants, do not apply to proceedings by mandamus." As far then as concerns the right of the prosecuting attorney to appear and control this cause by reason of the county having an interest, being a party in interest, although not a party of record, it seems to me conclusively established by the decisions of our Supreme Court in the three cases last above cited that, by reason of that interest, even if it exists, the prosecuting attorney has no right to assert it in the Hornberg case, or to interfere in and control that case; in the *interest* of the county, the county not a party, he cannot interfere in the mandamus proceeding.

This seems to be clear also from another point of view. That is, that the respondents in the case of State ex rel. Hornberg v. Judges of the County Court, is an action in which they, as judges, it is true, but individually, must make the return as they did in this case. It is true that it was alleged in the application which was made to us for the writ by the relator here, that that was filed in court by attorneys other than himself, but that is entirely immaterial. The return is made by the judges themselves; is their return; is not the return of the county; is not the return of any attorney; but it is the return of the individuals against whom the writ was directed and which commanded them to make the return.

The alternative writ is not only directed to the person occupying the office, but the return must be made by him. Says High on Extraordinary Legal Remedies (3 Ed.), sec. 446: "When the aid of a mandamus is invoked against an inferior court, it would seem to be sufficient, ordinarily, to address the writ

either to the court as such, or to the individual judges composing it. But when there are other judges authorized to hold the term of the court, the mandamus should be addressed individually, since in case of disobedience to the writ the power of enforcing obedience is exercised over the judges personally.''

The old and often followed case of St. Louis County v. Sparks, 10 Mo. 117, is cited in support of this. In the Sparks case it was urged that the writ having been addressed to the justices of the county court and severally served on them in vacation, that there was no warrant for this; that it should have been addressed to the court. Answering that, our Supreme Court said (l. c. 120): ''A mandamus in the alternative may be served on the officers composing the court in vacation, and . . . a delivery of a copy of the process showing the original, is a sufficient service. . . . It seems it may be addressed to the court or to the individuals composing it.'' Since that decision it has been the invariably approved practice to issue these writs against the judges composing the court, and the writ is served on them, not in term time but on the judges in chambers or in vacation, as other writs against individuals are served. That has always been so in the case of writs served upon the judges of this court by direction of the Supreme Court and we have invariably followed it in our own practice.

So fully has the rule that the direction of the writ is to the individual, and that he is the one who is to make the return, been recognized, that where the return of the judge or judges or court is signed by attorney, it has been challenged for lack of individual signature. Thus in State ex rel. Wittenbrock v. Wickham, Judge, 65 Mo. 634, the return was challenged on the ground that it was not the bona fide answer of the judge but a defense made and set up by an attorney. Answering this contention, our Supreme Court said (l. c. 636.), that as the law does not require

the return to be sworn to, and as the judge was rep-- resented before the Supreme Court by responsible attorneys of the court who have filed his return, "we cannot on the mere suggestion of the relator, say that this is not Judge WICKHAM's return." This undoubtedly means that if it had been shown that it was not the return of the judge but merely of the attorney, it would not have been sufficient.

This was followed by our court in State ex rel. Castlio v. Edwards, Judge, 11 Mo. App. 152.

In Ex rel. Douglass v. Circuit Judge, 42 Mich. 495, it is said (l. c. 497): "The answer filed is not signed by the circuit judge. It purports to have been drafted by attorneys and not to have been submitted to the respondent for approval by him. We do not consider, therefore, what appears therein, but have treated the case as on demurrer to the showing made by the relator." That is to say, the Supreme Court of Michigan treated a return not signed by those to whom it was directed, or by some attorney by their authority, as a nullity. What that court, in line with our own court, has held in the Edwards case, supra, and our own Supreme Court in the Wickham case, supra, would hold as to a return made by an attorney, which is not only not submitted to the respondent but by which, as here it is expressly stated, it is intended to repudiate the return of the respondents in the Hornberg case, and is to be a return, set up and devised by the attorney himself, without the assent and contrary to the will of the judges of the county court, is not difficult to determine.

I think that the case at bar, on this point falls directly under what is said by the Supreme Court of the United States in the case of United States v. Boutwell, 17 Wall. (84 U. S.) 604.

It is claimed that the decision in that case, as to this point, has been disapproved or qualified by later decisions of that court. An accepted text-writer, (2

Bailey on Habeas Corpus, p. 786) treating as well of
mandamus and of other extraordinary writs, in com-
menting on a decision of the Supreme Court of Wis-
consin as adverse to that of the United States v. Bout-
well, supra, the Wisconsin court holding that the Su-
preme Court of the United States had receded from
the decision in the Boutwell case, says: ''It will ap-
pear, however, from a reading of the case cited in
the federal court (Commissioners v. Sellew, 99 U. S.
624), that the position first assumed by it has not
been changed in the subsequent case. It will also
appear that that court assumes the very opposite of
the premises assumed by the Wisconsin court.'' Mr.
Bailey then quotes extensively from United States v.
Boutwell, supra, thus: ''The office of a writ of man-
damus is to compel the performance of a duty resting
upon the person to whom it is sent. That duty may
have originated in one way or another. It may, as is
alleged in the present case, have arisen from the ac-
ceptance of an office which has imposed the duty upon
its incumbent. But, no matter out of what facts or
relations that duty has grown, the law regards, and
what it seeks to enforce by writ of mandamus is, the
personal obligation of the individual to whom it ad-
dresses the writ. If he be an officer and the duty is
an official one, still the writ is aimed exclusively
against him as a person, and he only can be punished
for disobedience. The writ does not reach the office.
It cannot be directed to it. It is therefore in substance
a personal action, and it rests upon the avowed and
assumed fact that the defendant has neglected or re-
fused to perform a personal duty, to the performance
of which, by him, the relator has a clear right. . . .
Thus it is the personal default of the defendant that
warrants impetration of the writ, and if peremptory
mandamus be awarded, the costs may fall upon the
defendant.''

The decision in the Boutwell case is distinctly affirmed by the Supreme Court in Warner Valley Stock Co. v. Smith, 165 U. S. 28. That is substantially in line with the decisions of our own Supreme Court, to which we have referred, and to which we shall hereafter refer in treating of the office of the writ of mandamus. The case of Commissioners v. Sellew, supra, on its facts bears no analogy to the Boutwell case, nor to the case before us. The principle announced in the Boutwell case, it was held, is not applicable to the Sellew case, for in the Boutwell case respondent, an individual, was proceeded against, true as an officer, while in the Sellew case the writ was against the respondents as a body, "*a corporation created and organized for the express purpose of performing the duty, among others, which the relator seeks to have enforced.* The alternative writ was directed both to the board in its corporate capacity, and to the individual members by name, *but the peremptory writ was ordered against the corporation alone.* As the corporation can only act through its agents, the courts will operate upon the agents through the corporation. When a copy of the writ which has been ordered is served upon the clerk of the board, it will be served upon the corporation, and be equivalent to a command that the members of the board shall do what is required." (Italics ours.)

It is hardly necessary to say that the judges of the county court of St. Louis county are in no sense a corporation, nor would service upon the clerk of the county court have brought these defendants into court, or a peremptory writ issued with service upon that clerk have been binding upon the judges, or that disobedience to it by them under such form of service would be punished on them as for contempt. Nor would the county be liable for costs if the case is determined against the respondents. The respondents, as said in the Boutwell case, supra, and others cited, are pre-

sumably liable for costs and subject to attachment for contempt in case of refusal to make any return or to obey the writ, and these are reasons given why the proceeding is against the individual and not against the office. As well might it be said that where the writ of mandamus issues from the Supreme Court to our court that service of the writ upon the clerk of our court will be good service upon us as judges. While no decision passing upon that question has ever arisen, the invariable practice since the creation of this court in 1876, has been to serve such writs individually upon the judges of this court.

In some jurisdictions it is held: "A continuing duty may be enforced against successors of the officer originally in default," as illustrated in State v. Cornwall, 97 Wis. 565; in others it is held that "it will not lie against such successors when not themselves in default for the failure of their predecessors to perform the duty." So it is held in People v. Burns, 106 N. Y. App. Div. 36, 94 N. Y. Suppl. 196; State v. Cincinnati, 7 Oh. Dec. (reprint) 326; Holdermann v. Schane, 56 W. Va. 11.

Referring to the cases cited in support of the position of the relator, and first taking up State ex rel. Campbell et al. v. Heege et al., Judges of the County Court of St. Louis County, 37 Mo. App. 338, I am unable to see that it lends any support to the contention of counsel for the relator. All that is said as touching the propriety of the application for *certiorari* being made by citizens of St. Louis county instead of by the Attorney-General or the prosecuting attorney of the county, is that the reason the petitioners, taxpayers and citizens had appeared in our court and asked special leave to institute the proceeding in their names, was that they had applied to the Attorney-General of the State and to the prosecuting attorney of St. Louis county for permission to make the application at their relation respectively, but that in

both instances permission had been refused. Referring to this last statement our court said (1. c. 345) that it had not been controverted and that the prosecuting attorney of St. Louis had assented to the truth of it in so far as he was concerned. Our court then says: "We understand that the reason why the Attorney-General refused the use of his name was that he regarded it as a local affair which should be prosecuted in the name of the prosecuting attorney; and that the reason why the prosecuting attorney in like manner declined the use of his name was that there is a statute requiring him to appear in such cases for the county court—which rendered it inconsistent with his view of duty to act at once as the prosecuting officer and as counsel for the respondents. We incline to think that his views of duty were correct, and, in consequence of the refusal of the Attorney-General and prosecuting attorney of the county to institute the proceeding, we also think that, to prevent a possible failure of justice, it was within our discretion to grant the writ upon the application of assessed, tax-paying citizens of the township." That is all that is said in the opinion that can be claimed to have any bearing here. In a way it is *obiter* and certainly is not decisive of the question that is here presented. If any inference is to be drawn from it, it would seem to be that the prosecuting attorney, being the official adviser of the county court, could take no position antagonistic to it in court—which is just what the relator here seeks to do.

Clark & Grant v. Lyon County, 37 Iowa, 469, another case referred to in support of the right of the county attorney to appear in an action to which the county was a party, is an action directly against the county *eo nomine* to compel the payment of certain warrants. It appeared that the board of supervisors of the county were the same persons who had issued the warrants and, it was charged, issued them for

an illegal purpose and without consideration. In an action brought on these warrants against the county, it appeared that the board of county commissioners, ignoring the county attorney, had employed other attorneys whom it was understood would not contest the validity of these warrants. The district court, on the application of the district attorney, who was also *ex officio* county attorney, applied for leave to file and make the defense in the above case in behalf of the county. The district court declined to allow the district attorney to appear and file an answer in the case. From this refusal the district attorney appealed to the Supreme Court. The court held that it was the right and duty of the district attorney to appear for any county in his district, "in all matters in which it may be a party or interested, in the district court of his district." The use of the word "interested" here is of no particular significance, for in the proceeding before the court the county was a party of record. The court, however, as we have elsewhere noted, held that the matter of the refusal must be brought to the Supreme Court only by appeal. The court further said: "We do not hold, that if the district attorney had been allowed to appear and defend in the court below, and had been unsuccessful, he could, of his own motion, and against the wishes, and in opposition to the judgment of the board of supervisors, appeal the cause to this court and protract the litigation."

Neither Clough & Wheat v. Hart, 8 Kan. 487, nor Waters v. Trovillo, 47 Kan. 197, are particularly in point here. Both were actions on contracts of employment of private attorneys by the county commissioners. The point in decision in each was the power of these bodies to employ outside attorneys and contract for their payment by the county when the commissioners, as representing the county, were parties. The decision of the court was that as the statutes of

Kansas made no provision for the employment or pay of any outside attorney to assist in the prosecution or defense of claims against the counties or cities, that the contracts were *ultra vires* and payment thereunder could not be enforced against the county.

In Board of County Commissioners v. Jones, 4 Okla. 341, practically the same point is decided, and that was the sole question involved, namely, the authority of the county authorities to employ and pay out of the public funds special attorneys. The decision is, that no such authority existed. While in the discussion of this matter a good deal is said, both as original matter and by way of quotation, about the county attorney being elected by the people and his authority to appear in all cases in which the county is employed, as a matter of fact, it is *obiter*.

The Board of County Commissioners v. State Capital Co., 16 Okla. 625, does support the contention of relator here as to his authority to appear and conduct all cases in the court in which the county is a party, and even goes to the extent of holding that the county attorney is not bound to follow the direction and advice of the county commissioners in regard to the conduct of the litigation against the county. This decision stands alone on that proposition. We doubt if the rule there announced has ever been recognized in practice, certainly not by judicial decision, in our State. Judges of our county courts, as well as prosecuting attorneys, are elected by the people and are the agents of the people, each within their own sphere. But it has never been even suggested heretofore that the judges of the county courts were subordinate to the prosecuting attorney, or that the will of the latter should govern in matters within the ministerial, judicial, or even *quasi*-judicial powers of the county court. The Oklahoma decisions certainty are against the idea, so far as I know heretofore universally entertained in this State on that matter. While the prosecuting at-

torney is the law officer of the people, and in the proper discharge of his duties is responsible to none but the people, the judges of the county court are no less the agents of the people within well defined limits and responsible for their acts to the people alone. Both however, that is, the judges and the attorney, are after all confined to their own lines. The prosecuting attorney may possibly control the acts of the county judges through the courts, by proper proceedings, but not by his own will. When acting for the county court or its judges, he is in the position of any other lawyer toward his client. If his views are not those of the judges of the county court on a matter within their jurisdiction and authority, he should follow the course approved by our court in State ex rel. Campbell v. Heege et al., County Judges, supra, and keep out of the case. He can always reach the acts of the county court in some other way, as here, for instance: If a license is unlawfully issued to conduct a dramshop, its issue does not prevent the prosecuting attorney from prosecuting the keeper. As to the relation of attorney and client, it has been well said in Allen v. Stone, 10 Barb. (N. Y.) 547, l. c. 550, "That a man's rights may be affected, and he, perhaps, ruined by the act of an attorney whom he never employed, and may never have known, and without any notice whatever, is a position that must be sustained, if at all, by mere force of authority. It has no foundation in reason or justice, is intolerable in practice, and contrary to a fundamental principle that every man should have a day in court. . . . It also violates another principle, that one cannot act for another without authority, express or implied."

Coming to the action of respondent, Judge WURDEMANN, in overruling the motion of relator to strike the return of the judges from the files, and declining to allow the relator, as prosecuting attorney of the

county, to take charge of the pending proceeding before the court in which the judges of the county court were the respondents, as we have seen, it was held in Clark & Grant v. Lyon County, 37 Ia. 469, that on the refusal of the district court to allow the public officer, the district attorney, to appear and control the case in which the county was a party, that the appellate jurisdiction of the Supreme Court was ample and adequate to reach the matter; that being so that mandamus would not lie.

The general rule that mandamus will not lie when there is an adequate remedy, as by appeal, is stated in 26 Cyc., p. 158, par. 2, to be that it, "will not lie to control or review the exercise of the discretion of any court, board, or officer, when the act complained of is either judicial or *quasi* judicial." [See also Am. & Eng. Ency. of Law (2 Ed.), p. 753.] And it is further said in Cyc. (p. 158, par. 3): "While mandamus may be invoked to compel the exercise of discretion, it cannot compel such discretion to be exercised in any particular way." State ex rel. v. Jones, 155 Mo. 570, 56 S. W. 307, is cited for this. It is further said in 26 Cyc. 188, that "While a writ of mandamus will not as a general rule issue to review an exercise of judicial discretion, it may be employed to compel an inferior tribunal to act or to exercise its discretion, although the particular method of acting or the manner in which the discretion shall be exercised will not be controlled. But as a general rule it will not issue for this purpose where there is a remedy by appeal or other method of review." In 26 Cyc., page 140, par. C, it is said: "The writ is employed only in unusual cases where other remedies fail, and it is hedged about by many conditions totally inapplicable to the ordinary suit at law. . . . The issuing of the writ therefore is generally, almost universally, considered discretionary, and to this extent only is the proceeding a prerogative one." So it is

said in 19 Am. & Eng. Ency. of Law (2 Ed.), p. 751. Many decisions by our Supreme Court are to the same effect, as see State of Missouri ex rel. Ensworth v. Albin et al., 44 Mo. 346; State ex rel. v. Wilson, Judge, etc., 49 Mo. 146; State ex rel. Morse v. Burckhartt, Judge, 87 Mo. 533; State ex rel. Campbell v. Cramer, 96 Mo. 75, 8 S. W. 788; State ex rel. Herriford v. McKee, Judge, 150 Mo. 233, 51 S. W. 421; State ex rel. v. St. Louis, 158 Mo. 505, 59 S. W. 1101; State ex rel. v. Fraker, 166 Mo. 130, 65 S. W. 720; State ex rel. v. Gibson, 187 Mo. 536, 86 S. W. 177; State ex rel. Missouri Glass Co. v. Reynolds et al., Judges, etc., 243 Mo. 715, 148 S. W. 623.

In State ex rel. Morse v. Burckhartt, supra, while a proceeding for prohibition in which the writ was denied, Judge HENRY, speaking for our Supreme Court, discussed the question of mandamus at considerable length, referring particularly to State ex rel. Fitzpatrick v. Meyers, 80 Mo. 601. The Meyers case was a proceeding by mandamus, to compel the county court of Nodaway county to issue a dramshop license to the relator. The question of the controlling effect of what was known as the ''Downing Law'' was involved. Referring to the Meyers decision in the Burckhartt case, supra, our Supreme Court says in the latter (l. c. 537):

''Whether the county court was authorized to grant a dramshop license for a saloon, within three miles of the State University, depended upon the effect of the 'Downing Law' upon the three mile act. If the 'Downing Law' repealed it, the county court had, and if not, it had not authority to grant the license. The circuit court in the mandamus proceeding had jurisdiction to determine that question, and that it erroneously decided it, if such should be our opinion, does not affect the jurisdiction of the court. Whenever a court errs in expounding a statute, it gives or denies a right, which it is not, strictly speaking, authorized to do; and in every case, with as much

propriety as in this, it might be said that the court had no right to render the judgment entered. The question is not whether the court was authorized to render the judgment entered, but whether it had jurisdiction to enter any judgment at all. . . . No man has a right to anything contrary to law, but courts frequently err in declaring one to have a right which, on a proper construction of the law, would be denied him. . . . If the circuit court, in its judgment against the county court, erred, an appeal or writ of error might have been prosecuted to reverse it; and it is no answer to this that the judges of the county court refused to prosecute an appeal or writ of error. This court cannot interfere by this extraordinary writ to save the people of the district within which dramshops are prohibited from the consequences of the obstinacy, or whatever it may have been, which prompted the county judges to refuse to prosecute an appeal." Even a stronger case is Martin v. The State, 12 Mo. 471, where at page 475 it is said: "A circuit judge, therefore, discharging (a prisoner under *habeas corpus*) against this provision of the statute, may be considered as acting indiscretely, even erroneously; yet having jurisdiction over the subject, his order discharging, must be considered a justification to the jailor in turning out the prisoner, thus ordered to be discharged."

This case is cited and extensively quoted from with approval in State ex rel. Herriford v. McKee, Judge, supra, l. c. 242 and 243. Even stronger on this is State v. Wear, 145 Mo. 162, l. c. 190 and 203, 46 S. W. 1099.

Applying the principle announced in these cases to the case at bar, the determination of the right of the prosecuting attorney of St. Louis county to appear in this case, to allow him to withdraw the return made by the judges of the county court and substitute one of his own, and to take charge of that case, on the ground that the county was interested, and that he,

as prosecuting attorney of the county, was entitled to control the case, is an attack upon the judicial action of the circuit judge in a matter in which he had a right to err, and the correction of his error rests not by the extraordinary writ of mandamus but by appeal. In short, the action of the circuit judge was judicial, was over a matter within his jurisdiction and not such an action as can be controlled by the writ of mandamus. In line with the decision in the Burckhartt case, supra, see also State ex rel. Springfield Traction Co. v. Broaddus, 207 Mo. 107, 1. c. 121, and following, 105 S. W. 629. This latter case was a decision In Banc, concurred in by all of the judges except Judge GANTT.

The circuit judge did not decline to hear the prosecuting attorney on his motion; did not strike that motion from the files, but hearing it, considering it, acted on it and overruled it. That was judicial action. The question then is, can we reach that action of the Hon. Circuit Judge by mandamus? His court is one of general jurisdiction. He had power to issue the writ of mandamus then before him, and had jurisdiction over the subject-matter. Even if he erred in his action in overruling the motion or petition of the prosecuting attorney, relator, he was acting within his judicial power. He had a right to err. That error cannot be reached by mandamus. So an unbroken line of decisions of our Supreme Court all say.

For these reasons I am clearly of the opinion that the alternative writ should not have been issued and that having been issued it should be quashed and the respondent circuit judge discharged therefrom. On these two grounds, therefore, first, the grave doubt as to the jurisdiction of our court in this case at all, under the decision of the Supreme Court in State ex rel. Sale v. Nortoni et al., 201 Mo. 1; and, second, under State ex rel. Morse v. Burckhartt, 87 Mo. 533; State ex rel. Gordon v. Burkhardt, 59 Mo. 75; State

ex rel. v. Williams, 96 Mo. 13; State ex rel. Baker v. Fraker, 166 Mo. 130; and State ex rel. Springfield Traction Co. v. Broaddus et al., 207 Mo. 107, I think that we are bound to quash the alternative writ.

Deeming the decision rendered by the court contrary to the decisions of the Supreme Court in the cases last above cited, I ask that this cause and proceeding be certified and transferred to the Supreme Court.